(Decided March 3rd, 1898).

---

## THE JACOB TOME INSTITUTE OF PORT DE-POSIT *vs.* ANTHONY S. DAVIS, ET AL.*

*Ejectment—Defence on Warrant—Locations—Title by Adverse Pos-
session to Part of the Land Sued for—Right of Lessee of Ripa-
rian Lot to Make Additions Thereto—Evidence—Instructions to
Surveyor—Amendment of Certificate of Survey—Parol License
to Pass Over Land—Proof of Possession—Testimony of a De-
ceased Witness Upon Another Trial.*

In an action of ejectment when defence is taken on warrant and the
defendant's title to the land depends upon the correctness with which
certain deeds are located, and when it is the province of the jury

*See the preceding case of *Tome Institute* v. *Crothers et al.*

to determine the question of correctness, the defendant is entitled to have the jury specifically instructed as to the facts upon which his rights depend.

When the plaintiff establishes a title by adverse possession to a part of the land sued for, he is entitled to recover as to such part.

When an Act of the Legislature authorizes the proprietors of lots binding on a navigable river to extend the same into the water, a lessee of such a lot for 99 years, renewable forever, is entitled to make the extensions and when made he holds them in fee.

In an action of ejectment a map not made by public authority nor proved to be correct, cannot be used to enable a witness to testify as to the position of objects shown upon it which were of importance in establishing the location of a boundary line of the land in dispute.

When locations are made in an action of ejectment, it is the duty of the surveyor to make them according to the instructions of the parties, and these instructions must be specific as to boundaries, courses, distances, etc. The surveyor's return of a location not made in pursuance of such instruction is unwarranted.

A location must be accompanied by competent evidence tending to show that it was correctly made. And a location made by means of another map not found to be correct is not admissible.

Code, Art. 75, sec. 81, providing for the amendment at bar of plats and certificates of survey, does not authorize the making of a location by way of amendment which could not have been permitted at the time of the survey under the same circumstances.

While no parol evidence is admissible to show that a deed did not convey the property mentioned in it according to its terms, yet it may be shown that the grantee gave to the grantor a parol license to pass over the land.

A written memorandum by a deceased person relating to the position of a building, which position was a point in controversy, is not admissible when not made in the course of such person's business or duty.

When the question relates to the precise position of a building, a witness cannot be allowed to testify as to what the owner of the building once said to him about its position, such evidence being hearsay.

Parol evidence is not admissible to show who the grantor was in a deed of certain land, but a witness may be asked from whom a certain party got possession of the land—possession being a fact provable by parol.

In an action of ejectment by the heirs at law of a decedent, the testimony given by a deceased witness upon the trial of an action of trespass *q. c. f.* by the administrator of the same decedent against the same defendant, and relating to the same land, cannot be proved because the parties are not the same, and there is no privity between them.

Appeal from the Circuit Court for Harford County (WATTERS, J.), to which the case had been removed for trial from the Circuit Court for Cecil County. The thirteenth exception was taken below to the ruling of the Court allowing Davis to testify to the circumstances attending the execution of the deed from Davis to Pugh, and to the declarations of Pugh made afterwards. The twenty-second exception was taken to the refusal of the Court to allow a witness to testify as to what Rinehart said to him concerning the location of Rinehart's stable at the time it was building.

The plaintiffs (appellees) offered at the trial twenty-one prayers, of which the following were granted:

1. If the jury find that prior to 1837 there was land between Water street, in the town of Port Deposit, and the Susquehanna River, opposite Lots 30 and 31, which was known as the "water privilege" of said lots, and that Isaac Nowland was in possession thereof; and that in 1837 the said Isaac Nowland executed and delivered to David White the deed of that date, offered in evidence, under which said White entered into possession of said land, or some part thereof; and that in 1864 the said White executed and delivered to James A. Davis the deed of that date, also offered in evidence, and that said Davis thereupon, under his said deed, entered upon said land, except that portion which had been conveyed by said White to Edwin J. Rinehart in 1855, and extended the boundaries thereof by filling in, wharfing out and reclaiming land formerly covered by the waters of the Susquehanna River, and shall further find that such possession of Davis of such reclaimed land was adverse, uninterrupted and exclusive for more than twenty years, then the title of said Davis to said reclaimed land was a good and sufficient title in law. (Granted).

2. If the jury find the execution and delivery of the deed, offered in evidence, from Isaac Nowland to David White, in 1837, and also of the deed from David White to James A. Davis, in 1864, and that said Davis thereupon, in 1864,

under his said deed, entered into possession of the land, in the town of Port Deposit, opposite Lots 30 and 31, lying between high and low-water mark of the Susquehanna River and filled in and wharfed out and reclaimed from the waters of the Susquehanna River a large quantity of land in front of said shore, and was in possession thereof, and that such possession of said reclaimed land was adverse, uninterrupted and exclusive for more than twenty years, then the title of said Davis to said reclaimed land was a good and sufficient title in law.    (Granted).

4. If the jury find, that in 1864, the land below Water street in Port Deposit, opposite Lots Nos. 30 and 31, had in 1864, acquired and was known by the name of "the water privilege of Lots Nos. 30 and 31," and further find the execution and delivery of the deed offered in evidence from David White to James A. Davis in 1864, then, by its true construction, said deed conveyed all of White's interest, if the jury shall find at that time he had any, in said land to Davis.    (Granted).

6. If, under the instructions of the Court, the jury find a verdict for the plaintiffs, and find that the defendant corporation has used for the purpose of maintaining its institute, the land of the plaintiffs, then the plaintiffs are entitled to compensatory damages on the basis of what would be a reasonable sum to be paid for such use of their land by the defendant.    (Granted).

8. If James A. Davis was in possession of the land between Water street and the railroad tracks, as shown on the plat made in this case, and Joseph B. Pugh requested said Davis to permit him to use and occupy said land, and in consequence of said request and Davis' permission, said Pugh occupied the same, then Pugh's possession would not be adverse possession, but would in law be Davis' possession as to the part so occupied by Pugh.    (Granted).

9. If the jury find the execution and delivery of the deed from David White to James A. Davis, dated the 13th of April, 1864, and that Davis, under said deed, entered into

and occupied any part of the land conveyed by said deed, then such possession by Davis of any part of said land gave him, in law, constructive possession of the entire piece or parcel therein conveyed, except that part included within the lines of the deed to Rinehart in 1855, and of every part thereof; and if the jury find he was in such possession, then before the defendant can acquire title to any part of said land by adverse possession, it must prove that it, or those under whom it claims, have been for twenty consecutive years before this suit, in the actual, hostile, visible, notorious, exclusive and uninterrupted possession of such part. (Granted).

The plaintiffs pray the Court to instruct the jury, that notwithstanding they may find that David White saw Rinehart expend money building his stable, where it was testified it was built on the property now in dispute in this case, and further find that he did not give him notice or tell him that he, Rinehart, was building the same on his land, does not preclude those claiming under said White by subsequent deeds from asserting title to said land at law; nor does the further fact, even if the jury believe it, that James A. Davis saw the defendant building its institute on the property in dispute in this case, and did not give said institute, or its agents, or any of them, notice, or tell it, or them, that the said institute was being erected on his, Davis' land, does not preclude the said Davis, or those claiming under him, from asserting their title to said land at law, unless the jury find that said Davis acted fraudulently.    (Granted).

19. That the defendant cannot be allowed to avail itself of any possession so as to defeat the title of the plaintiffs, further than such possession is located on the plats in this case.    (Granted).

20. The plaintiffs pray the Court to instruct the jury, that under the pleadings in this case, the plea of not guilty admits the possession of the plaintiffs of the land in issue, and their ejectment by the defendant, and puts in issue the

.title and right of possession to the premises, and the damages sustained by the plaintiffs.　(Granted).

21. If the jury find that James A. Davis entered upon and took possession of the land in the town of Port Deposit lying opposite Lot No. 31, between the Rinehart stable and the Susquehanna River, and filled in and wharfed out, and reclaimed from the waters of said river a quantity of land in front of said shore, and was in possession of the same, and that said possession of said lands was adverse, uninterrupted and exclusive for twenty years, then the title of said Davis to said lands was a good and sufficient title in law. (Granted).

The defendant offered twenty-three prayers of which the following are considered in the opinion of the Court:

5. That by the true construction of the deeds from Isaac Nowland to David White, .and from David White to James A. Davis, offered in evidence, the same would operate to convey to the grantees, if anything, only the privileges of the water in Lots No. 30 and 31 from a point where high tide reaches on said lots, or the accretions thereto, at the time said deeds were made, respectively.　(Granted with modifications).

9. If the jury believe that any part of the land between the lower line of 31 bordering on Water street and the Susquehanna River was originally fast land, and that ordinary high tides did not reach to the lot described in the deed from Sarah M. Thomas to Catherine White and others as Lot 31, then said Lot 31 had no water rights or privileges which could be conveyed, and the deed from Isaac Nowland to David White, dated the 17th day of April, 1837 (if the jury find said deed), conveyed no right, interest or estate in any land between said original Lot 31 and the river, and if the jury further find that Allen Anderson held in possession all the land between the said original Lot 31 and the river, claiming title thereto, continuously, openly, notoriously and adversely for more than twenty years prior to his death in 1860, then the said Allen Anderson, his heirs

or assigns have title to all the accretions into the Susque-
hanna River opposite his said holdings, whether said accre-
tions resulted from natural or artificial causes, and the plain-
tiffs are not entitled to recover in this action for any part of
the land located by them between said original Lot 31 and
river, and the verdict of the jury in this action must be in
favor of the defendant, unless the jury shall further find that
James A. Davis and the plaintiffs, his heirs at law, for at
least twenty years before the bringing of this suit, held in
their possession every part of the land located by the plain-
tiffs on the plats in this case, as the adverse holdings of
James A. Davis and used and occupied the same, and every
part thereof, claiming title thereto, openly, notoriously, ex-
clusively and continuously for the said period of twenty
years.    (Refused).

10. If the jury find from the evidence the due execution
and delivery of the lease from Sarah M. Thomas to Eliza-
beth and Catharine White, and the assignment of the lease
from said Elizabeth and Catharine to David White, and from
him to Isaac Nowland, all of which were offered and read
in evidence, then they are instructed that the title of Isaac
Nowland to the Lots 30 and 31, in the town of Port Deposit,
was a leasehold estate, and that the accretions made into
the river Susquehanna in front of said lots by the said Isaac
Nowland, and by those claiming under him, are also lease-
hold estates, and that upon the death of the owner of any
part of said accretions holding title thereto under said Now-
land, his estate therein passed to his personal representatives
and not to his heirs at law, and if the jury believe that James
A. Davis held title to the land described in the declaration
through or under the said Nowland, then the plaintiffs are
not entitled to recover in this action.    (Refused).

16. If the jury find that at the date of the deed from Isaac
Nowland to David White, offered in evidence, the water's
edge or high-water mark of the Susquehanna River, with
reference to Lot No. 31, referred to in the evidence, was fifty-
nine and one-half feet from the original lower line of said

lot as laid down on the Hugh Beard plat, offered in evidence, then the beginning point of the deed from David White to Edwin J. Rinehart, offered in evidence, is not the southwesternmost corner of said original Lot 31, but is at a point in the northwesterly line of said Lot No. 31, extended towards the river and fifty-nine and one-half feet distant therefrom. (Refused).

17. If the jury find that David White took the deed from Isaac Nowland, offered in evidence, dated April 17th, 1837, and entered into possession of the water-rights and privileges mentioned therein, and that at the date of said deed, ordinary high tide came to log cribbing, about fifty-nine and one-half feet from the lower end of Lot 31 hereinafter mentioned, and that in the year 1839, a certain Allen Anderson took from said Nowland the deed offered in evidence, dated April 24th, 1839, and entered into possession of the land mentioned therein, and that the lot so possessed by said Anderson opposite Lot 31, as marked upon the plat of Hugh Beard, offered in evidence, and on the lower or river side of Water or Main street and extended from said street to said high water-mark, and that the said rights and privileges appurtenant to or issuing out of said Lot 31 so possessed by said White, lay westerly or below said high-water mark, and extended thence into the river, and that said Edwin J. Rinehart lived on the joining Lot No. 32, and was aware of said possession and holdings, and that said holdings were accepted and acquiesced in by said owners and were never questioned by them, and that said lot so possessed by said Anderson was always treated by those holding the same, as well as by the said White and Rinehart, as an extension of or addition to and part of Lot No. 31, then the jury are instructed that the beginning of the land conveyed by David White to Edwin J. Rinehart, by deed offered in evidence, dated May 21st, 1855, is the southwesternmost corner of said additional lot and not of said original Lot No. 31. (Granted with modifications).

19. If the jury find from the evidence, that David White,

on the 17th day of April, 1837, accepted from Isaac Now-
land the deed of that date, which was offered and read in
evidence, and shall further find that at the time said deed
was delivered and accepted by the said White, high water
on Lot 31, came to a log cribbing to the westerly of Water
street, of the town of Port Deposit, and between said street
and the river, between 25 and 30 feet from said street, and
shall further find that all the land between the original line
of Lot 31 fronting on Water street, as located on Hugh
Beard's plat of the town of Port Deposit, and said crib-
bing at the top of high-water mark was continuously in
the occupation and possession of Allen Anderson from
1839, to the time of his death in 1860, and that said occu-
pancy and possession was open and notorious, and in pur-
suance of the deed to him from Isaac Nowland, dated the
24th day of April, 1839, offered in evidence, and was known
by the said David White, and the said White never objected
thereto, and never made any claim to said land between
said street and cribbing at high-water mark; and shall fur-
ther find the due execution and delivery of the deed from
the said David White to Edwin J. Rinehart, dated the
21st day of May, 1855, which was offered and read in evi-
dence, and that the said Rinehart shortly after date of said
deed, and in pursuance thereof, took possession by filling
in with earth and other materials, the water to the westward
of said cribbing, for a distance of about 60 feet, to a retain-
ing wall built by him to protect the bank of said filling from
the said tides, and erected on said filled-in lot a stable, and
shall further find that the act upon the part of the said
Rinehart, of so taking possession of said lot, filling in the
same with earth and other material, and building thereon a
stable, was done with the knowledge of the said White, who
saw the same almost continuously while said work was
being done, if the jury so find, and that the said White made
no objection or protest thereto, and shall further find that the
said Rinehart used, occupied and enjoyed, without objec-
tion from the said White, the said stable and the lot so filled

in by him openly, notoriously and continuously until the time of his death, in 1860, and that his heirs and devisees continued to use, occupy and enjoy the same openly and notoriously from and after his death, and if the jury shall further find that on the 30th day of April, 1864, while said heirs and devisees were so in possession of said stable and lot, James A. Davis accepted from said White a deed of that date, which was offered and read in evidence, that then the plaintiffs are precluded in this action from claiming that the beginning point of the location of said deed from White to Edwin J. Rinehart, is at the southwesternmost corner of Lot 31, where the original line of said lot intersects the line of said Water street.    (Refused).

20.    That if the jury find the due execution and delivery of the several deeds and wills offered in evidence, and that Charles Rinehart and E. John Rinehart were the only children of Edwin J. Rinehart, and that said deeds are truly located under any of defendant's locations, and further find that Lot 31, mentioned in the evidence, as originally laid out, bordered on the Susquehanna River, and that said river is a public navigable river where the tide ebbs and flows and that there was a street projected in the edge of said water in front of said lot when originally laid out, and that said lot was extended by fillings or accretions across said street and into said river for a distance of some thirty feet beyond said street, forming a water lot below said street to which the tides of said river reached at ordinary high water, and that said water lot was extended and formed as aforesaid, as early as the years 1832 or 1834, and was then in the use and occupation of said Isaac Nowland under claims of title thereto and continued in the exclusive, uninterrupted and adverse use and occupation of said Isaac Nowland, and those claiming under him by the deeds aforesaid, for a period exceeding twenty years from said year 1834, that then said water lot became a lot entitled to accretions thereto under the charter of the town of Port Deposit offered in evidence; that if the jury further find

the execution and delivery of the deed from David White to Edwin J. Rinehart, offered in evidence, and that the lines thereof made in this case reached the tide water of the Susquehanna river at the time it was made, then all the accretions to said water lot became the property of said Edwin J. Rinehart, and those claiming under him by the deeds and wills aforesaid, and the plaintiffs cannot recover for any part of said accretions, unless the jury further find that plaintiffs or their father, or both combined, held said part of said accretions and every part thereof as located by them, uninterruptedly, exclusively and adversely for a period of twenty years, after it rose above tide water and became fast land, before this suit.   (Refused).

21. The jury are instructed that there is, in this case, no sufficient evidence to establish any title in the plaintiffs, by adverse holding, to any portion of the land described in their declaration, lying east of the Columbia and Port Deposit Railroad, between said railroad and the street. (Refused).

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, ROBERTS and BOYD JJ. (April 13, 1898).

*L. Marshall Haines* and *Geo. L. Van Bibber* (with whom were *S. A. Williams* and *A. L. Crothers* on the brief), for the appellant.

*Albert Constable* and *John S. Young* (with whom were *Wm. T. Warburton* and *Jas. J. Archer* on the brief), for the appellees.

BRYAN, J., delivered the opinion of the Court.

Many of the questions in the present record were decided by us at the last term of the Court in an appeal by this appellant against Davis' administrators.   That was an action of tresspass *quare clausum fregit*, for injuries alleged to have been done to the land of the intestate in his lifetime by the appellant.  This is an action of ejectment by the

heirs of the same decedent.   Defendant pleaded not guilty, and took defence on warrant.   Subsequent reflection has confirmed us in the opinion which we expressed on the former appeal.   Our conclusions on the cardinal point of the controversy were founded on the construction of the lease from Mrs. Thomas to the Misses White.   In the lease the plat made by Hugh Beard was referred to, and it was stated that the two lots then leased were "distinguished and marked on said plat by the numbers thirty and thirty-one."   A reference to the plat shows that the two lots are laid out as running down to the water's edge, and that a street thirty-three feet wide is represented as entirely covered with water.   The explanation which accompanies the plat, and which was made by the surveyor, states that the lots drawn on the plat vary in front "so as to answer the different turns of the river shore."   The lease in its terms is without any ambiguity whatsoever, latent or patent.   In explicit terms the lessor demised to the lessees the two lots whose boundaries were marked on Beard's plat.   It was the duty of the Court to expound the deed, and to declare its meaning.   This meaning must be determined by what appears on its face, and not by the testimony of witnesses. Beard's plat gave lots which reached to the margin of the river, and exhibited a street which was intended to be built out into the water.   These were the lots to which the lessees acquired title from the lessor.   If the lessor had owned the bed of the street, the lease would have worked a dedication of it.   But not owning the bed, the lessor could not lawfully construct the street, nor authorize or require any one else to construct it.   The exhibition of the street on the plat simply showed a purpose to build it.   To build it would be to commit a trespass on the land of the State.   The record does not show with any certainty the actual condition of the street in eighteen hundred and twenty-four, the time when the lease was made. No one of the witnesses in the case have testified to its condition in that year; and in fact none of them ever

saw it until years afterwards.    It may, however, be in-
ferred that but little progress had been made towards its
construction.    But whether much or little, the rights of
the lessees are not affected.    They acquired a perpetual
leasehold in lots running down to the river, subject, however,
to the construction of a street in front of them.    But the
street could not lawfully be constructed.    Assuming, how-
ever, that they consented to the building of it and that they
forfeited all right to object to it; they were relieved from all
injurious consequences by the Act of 1824, chapter 33.
This Act gave to these lot holders and others in the same
situation the right to extend the whole front of their lots as
far as they should see fit into the Susquehanna river.    So far
as the street was constructed, it was legalized; where it had
not been constructed authority was given for its construc-
tion.    The State was the only party whose rights could be
infringed by the existence of the street, and these rights
were waived, or fully granted to the lot holders.    If the
street cut off riparian rights they thereby became vested in
the State; and this Act of Assembly reinstated the lot
holders in their former rights, and at the same time be-·
stowed upon them benefactions of greater value.    We
might properly have been content with a simple reference
to our former opinion.    But as there seems to have been
some misapprehension in regard to this matter, we have ex-
pressed somewhat more fully what was already necessarily
implied.    Referring now to the opinion for a statement of the
titles of the parties to this suit, we will forbear to discuss
any further the questions which have been decided.

On the former appeal by this appellant we decided that
the deed from White to Rinehart conveyed land commenc-
ing at high-water mark in the· Susquehanna River as it ex-
isted on the seventeenth day of April, eighteen hundred
and thirty-seven.    And that unless White owned some fast
land when he executed the deed to James A. Davis, he
had no interest which he could convey, and that in this
event Davis acquired nothing.    The location of high-water

mark at the time mentioned was a question for the jury on the evidence as applied to the plats made under the warrant of resurvey. We also decided that there was evidence of adversary possession by Davis competent to prove a title in him to the land in dispute. These are the really important questions in this case; and they determine the proper disposition to be made of most of the prayers.

The fourth prayer of the plaintiffs stated that White's deed to Davis in eighteen hundred and sixty-four conveyed all White's interest in the water privilege of Lots 30 and 31, if the jury should find that he had any at that time. White's interest depended on the correctness of the locations, and it was the province of the jury to determine these as facts. It was the right of the defendant to ask instructions by which the jury should be informed specifically on what facts White's interest depended. And, as will be seen, it exercised this right in several of its prayers. We see no error in this prayer. And we think that what we have already said sufficiently shows that the other prayers of the plaintiffs were properly granted. The defendant offered twenty-three prayers. The Court granted ten of them as offered, and the fifth and seventeenth with modifications, and refused the others. No bill of exceptions was filed by the plaintiffs, and therefore the prayers granted as offered by the defendant are not before us. The second and third prayers are identical with the fifth and sixth in the former case, and were properly refused as we then said. The fifth prayer ought to have been granted without modification. It is the same as the tenth in the former case. The modification made by the Court made a change in its meaning injurious to the defendant. It restricted the finding of the jury to the high tide at the time of the deed from Nowland to White. The ninth prayer required the jury to find as a condition of the plaintiffs' recovery that the adverse possession of Davis and his heirs extended to every part of the land located by the plaintiffs; whereas if they had held

adverse possession of any part of it for twenty years, they acquired a title to such part.

The tenth prayer asserts in effect that the title of Davis derived from Nowland through White was a leasehold estate, and that therefore the plaintiffs, his heirs at law, could not recover in this action. The deed from Nowland to White in eighteen hundred and thirty-seven conveyed to him, his heirs and assigns, the entire water privilege of lots thirty and thirty-one; and in eighteen hundred and sixty-four White conveyed all the interest in them which he then had to Davis. Nowland held a perpetual leasehold in the lots thirty and thirty-one. By virtue of this leasehold he had the absolute control and management of the property, and the entire beneficial interest in it subject to his obligation to pay rent to the reversioner. He was the "*proprietor*" of these lots within the meaning of the Act of 1824; and had by virtue of that Act the right to acquire land below high water by making extensions into the Susquehanna River. The fast land which he should make in this way would belong to himself. His right to it was derived from the bounty of the Legislature which permitted him to acquire land for himself by his own labor, or by the expenditure of his own means. No portion of it ever at any time belonged to the reversioner, or was ever in his possession, actually or potentially. As the reversioner never had any interest or title to this land, nor any possession of it, he of course never conveyed, nor assumed to convey either title or possession to the lessees or their assignees. Nowland held title and possession which were in all respects independent of the reversioner. By force of the Act of Assembly he owned it because of his proprietorship of the land bordering on the shore line. That was his title to it. It may not be in all respects entirely accurate to say that he held it by the same title, by which he held the original lots. That is, the quantity of estate was not the same. Yet he had a right to this land because he was the proprietor of the original lots. That proprietorship was the origin and

support of his right.   Lord Coke says :  " *Titulus est justa causa possidendi id quod nostrum est.*"    In other words, *title* is the right whereby we hold our own.   The right by which he held the land formed by extension into the river was given by the title which he held to the original lots. In this sense only can it be said that these different properties were held by the same title.   It will be seen that we think that Nowland validly conveyed a fee-simple to White in eighteen hundred and thirty-seven.   Consequently defendant's tenth prayer was properly refused.

The eleventh prayer is identical with the eighteenth prayer in the former case, which we said was properly refused. The fifteenth prayer was waived by counsel.   The sixteenth prayer states the construction of the deed from White to Rinehart, as we decided it in the former case.   It ought to have been granted.   The same construction is stated with unnecessary detail of circumstances in the seventeenth prayer; and it ought to have been granted without modification.   The same may be said of the nineteenth prayer. The twentieth prayer was properly refused, because it required the jury to find as a condition of the plaintiffs' recovery their adverse possession of all the land in dispute. The twenty-first prayer was properly refused.   We have now gone over all the prayers which are properly before us.

Many of the exceptions to testimony have been waived by counsel.   We shall consider such of them as are still insisted on.   In the first exception the defendant objected· to the introduction of a private plat.   It does not clearly appear that the locations on the plat were put in evidence.   We shall therefore pass this exception by, inasmuch as a similar objection appears in the fourth and eleventh exceptions.   In the fourth exception it is stated that Solomon's plat was shown to a witness, and that the defendant objected to the use of it, because its accuracy and correctness had not been shown ; but that the Court permitted it to be exhibited to the jury in connection with the testimony of the witness. In the eleventh exception the Court permitted the same plat

to be used, as it said, "*to illustrate.*" This exception contains a reference to the twelfth exception, which shows in what manner the plat was used. Solomon's plat is a printed document purpoiting to be a map of the town of Port Deposit, made in the year eighteen hundred and fifty-six. It is not shown to have been made by any public authority, nor is it shown to be correct. But it was used to enable a witness to testify to the position of objects shown upon it which were of essential importance in showing the location of a boundary line of the land in controversy. It was permitted to be used as an instrument of evidence; and such action of the Court was erroneous.

We will state that portion of the fifteenth exception, which has not been waived by counsel. The Court had permitted a new location of Davis' adverse holdings to be made by amendment of the surveyor's plats. The defendant objected to the location, and also to all of the evidence relating to the locations made on the plats of the surveyor from Solomon's map. In the first exception, the defendant had objected to these locations, and had reserved the question. The Court permitted the new location to remain, and also the locations from Solomon's map, and permitted all the testimony relating to it, to be considered by the jury. The new location permitted by the Court was made in obedience to the following instruction given to the surveyor by counsel for the plaintiffs. " Sir: Locate for plaintiffs the adverse holdings of James A. Davis, in his lifetime, in the lands opposite Lot 31, in the town of Port Deposit, in Cecil County, and between Water street, in said town, and the Susquehanna river." It is the duty of the surveyor to make the locations on his plats according to the instructions of the parties. But the party, who wishes a location made, must inform the surveyor specifically how he wishes it to be made; what boundaries, courses, distances, &c., &c., he desires to have surveyed. The instruction in question did not give this information. The surveyor in his return shows lines, courses and distances, measurements and calls with

circumstantial minuteness.    He did not obtain the information for this return from the instruction given to him by the plaintiff, and he had no other proper source of information for making his locations.  We think that the instruction was insufficient to authorize the surveyor's return and that the return was unwarranted.  Article 75, section 81, enacts that "the plats and certificates of survey in every case may be amended at bar."    But we suppose that the amendments in the plats must be made according to the law and practice of ejectment.    The amendments are authorized by law so that something may be supplied which was unknown or overlooked at the time of the survey.    It cannot be that a location may be made by way of amendment, which could not have been permitted at the time of the survey, if sought to be then made under the same circumstances.    But the ruling of the Court had a much wider scope than the permission to make the location.    It in effect, admitted the location in evidence to the jury.    Of course, this could not properly be done, unless the location was accompanied by proof tending to show that it was correctly made.    And this proof cannot be deduced except by the aid of Solomon's map, which we have already said was not admissible in evidence.    The same remarks apply to the locations made from the same map in pursuance of plaintiff's instruction to surveyor, No. 5.  They ought not to have been admitted in evidence.

We see no objection to the question to Anthony Davis in the thirteenth exception.    But it would have been incompetent to show by parol testimony that the deed in question did not convey the property mentioned in it, according to its terms.    It was competent, however, for Pugh to give by parol a license to Davis to pass over his land.    In the seventeenth exception the defendants offered to prove a statement in writing made by Joseph P. Pugh who was dead at the time of the trial.    It was in reference to the position of the Rhinehart stable, which is one of the points in controversy.    It was a memorandum which was not made in the

ordinary course of the declarant's business or duty, and it is not within the rules relating to the admission of entries by deceased persons. We think that the testimony proposed to be given in the twenty-second exception was hearsay, and was therefore properly rejected.   In the nineteenth exception a witness was asked from whom Rhinehart bought the lot where the stable was built.   This fact could be proved by the deed, but not by parol.   In the twentieth exception the same witness was asked from whom Rhinehart got possession of the lot.   Possession is a fact which is provable by parol.   The question was disallowed, but it ought to have been permitted.

In the twenty-third exception the defendant offered to give in evidence the testimony of Everist, a witness who testified in the former suit, but who died before this trial.  The Court properly refused to admit the evidence.   The plaintiffs in this suit are the heirs at law of James A. Davis.   In the former suit the plaintiffs were his administrators.   The parties are not the same, and there is no privity between them.   Greenleaf says that "there are privies in estate, as donor and donee, &c. ;  privies in blood as heir and ancestor, and co-parceners ; and privies in representation as executors and testator, administrators and intestate ;  and privies in law, where the law, without privity of blood or estate, casts the land upon another, as by escheat." 1 *Greenleaf on Evidence*, section 189.   No privity is suggested between the heir and the executor or administrator.  They hold different estates.   " The heir has the same uncontrolled discretion in resisting claims against the realty, that the executor or administrator has in regard to the personalty." *Collinson* v. *Owens*, 6 Gill & Johnson, 10.   A judgment against an executor or administrator is not even *prima facie* evidence of debt in a proceeding against the heir for the sale of the real estate for the payment of the debts of the deceased. *Birely* v. *Staley*, 5 Gill & Johnson, 453.   This principle is said by the Court in the last mentioned case to be settled by frequent decisions in this State, so as to preclude all de-

bate on the subject.   And the cases are numerous and positive on this point.

The judgment must be reversed, and a new trial ordered.

*Reversed and new trial.*

(Decided June 28th, 1898).