## CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed June 27, 1902.

BENJAMIN H. HARTOGENSIS, TRUSTEE,

VS.

ISAAC M. APPEL.

B. H. Hartogensis and Richard S Culbreth for plaintiff.

Wm. S. Bryan, Jr., for defendant.

DENNIS, J.—

I do not think the depositions of Appel taken before the referee in bankruptcy are admissible in evidence. Such an examination is not "a judicial proceeding," not between the "same parties," both of which conditions must concur to render the testimony of a witness who has since died admissible as evidence in a subsequent proceeding. State vs. Commissioners, &c., 54 Md. 428; Tome Institute vs. Davis, 87 Md. 609.

This special examination of the bankrupt, under the provisions of the bankrupt law authorizing "any officer, bankrupt or creditor to require any person, including the bankrupt, to appear before a referee, to be examined concerning the acts, conduct or property of a bankrupt whose estate is in process of administration," is a mere "pumping" process to enable the assignee to get at the true situation; it is in no sense a "judicial" proceeding in the meaning of the law, and the party examined—even though it be the bankrupt himself—is in no sense a "party," but only a "witness"; and the deposition of a bankrupt so taken is no more admissible than would be the deposition of any other witness. The examination in this case was upon the application of a creditor, and the trustee did not participate at all in the proceedings, and it is difficult to see how he can be considered a party, in the sense that the law requires, viz., that the proceedings shall be between the same parties.

But even if Appel's depositions were admitted, it would not affect my conclusion.

The Bankruptcy Act, ch. 6, section 60, provides:

"a. A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of any such judgment cr transfer will be to enable any one of his creditors to obtain a greater percentage of debt than any other of such creditors of the same class;" and

"b. If a bankrupt shall have given a preference within four months before the filing of a petition * * * and the person receiving it, or to be benefitted thereby, or his agent acting therein, shall have "reasonable cause to believe" that it was "intended" thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

There is no question about the transfer to Appel by the bankrupt being made within the prohibited period of four months.

So, to sustain the plaintiff's claim he has, under the sections quoted, only to establish three facts, viz:

1st. That the bankrupt was actually insolvent at the time the transfer was sought to be set aside.

2nd. That the grantor "intended" to give a preference; and

3rd. That the grantee had "reasonable" cause to believe that the "grantee intended" to give him a preference.

That Greene was actually insolvent at the time the transfer was made cannot be disputed. His entire assets, (including his book accounts, put down at their "face value" at $1,000, although they only realized about $300,) amounted to $4,200; his liabilities amounted to over $6,700.

After his transfer to Appel, and thus canceling Appel's claim, Greene admits that he still owed some $3,600, while his total remaining assets, taking them to be worth their "face value" was only $1,600.

(In the list of liabilities was a claim of $1,700 due his parents for money advanced, and it is urged that he did not expect to have to pay this, and therefore it should be deducted from the list. In reply, it is only necessary to say that the original advance was $2,000, and he had reduced it, by payments on account, by $300, to show that his understanding in regard to the loan was very different before his failure from what it was afterwards.)

The above figures are given from Greene's own statement; the report of the appraisers in bankruptcy, the report of sales by the trustee, put a different view upon the situation; and as matter of fact, shown by the auditor's report, Greene's unsecured creditors only received about five cents on the dollar

of their claims, from a sale of all the assets left after the transfer to Appel.

Moreover, Greene, for some time before his sale to Appel, had been getting merchants from whom he had purchased to take back goods sold him—admits that owing to his health and its being "a bad season," he was going behind—"everything was against me;" and he and Appel seem to have worked together in running the business and disposing of the remaining stock left in Appel's hands after the transfer.

Moreover, just before the transfer creditors commence to press Greene; he was in difficulty, and Appel knew it, and, as Greene testifies, it was in consequence of this knowledge that Appel approached Greene and asked Greene to transfer to him his stock and plant.

Every fact above stated was well known to Appel. He knew the extent of Greene's liabilities, including the debt due his parents; he had seen the merchandise books of Greene "from time to time" (and it was always accessible to him); he knew that other creditors were pressing him; and under these circumstances, upon his own motion, he induced Greene to make to him a transfer of his entire plant and stock, without even an inventory, in consideration of an antecedent indebtedness.

Now, the courts have always held that the sale of an "entire stock," under such circumstances—without an invoice or inventory—by a failing debtor, is "prima facie" evidence of "mala fides," and the presumption must be rebutted by affirmative testimony.

But leaving out this legal presumption, even if the burden was wholly upon the plaintiffs, have they not met it fully, and conclusively established the three propositions necessary to entitle them to recover? In my judgment, they have done so fully.

1st. Was the bankrupt actually insolvent at the time the assailed transfer was made. Of this, I think there can be no discussion.

2nd. Did the grantor "intend" to give a preference. A man is supposed to intend the inevitable consequence of his own acts; and with Greene's knowledge of his financial condition, it is impossible to escape the conclusion that he "knew" that his transfer to Appel would be a preference, and he must therefore have intended it.

3rd. Did Appel have "reasonable cause" to believe a preference was intended? In view of the facts above recited, in my opinion, he not only had "reasonable cause to believe it," but he "knew" it, and worked to bring it about. I will sign a decree accordingly.