(Decided February 8th, 1859.)

## MARY JANE WILSON vs. JOHN HINSLEY.

In an action for damages done to the plaintiff's house by the *manner in* which the defendant built a stable adjoining it, evidence that the *marketable value* of the house had been diminished by the injury *complained of* is admissible, but not that such value had been diminished by the *fact of the erection of a stable* adjoining thereto.

A party *in possession* of real estate can maintain an action for a trespass against any one save the *legal owner;* the fact that his tenant was in possession of the property and *paid rent therefor to the plaintiff*, gives him a right to bring an action of trespass against a *wrong-doer*, for an injury to the reversion.

Wilson *vs.* Hinsley.

APPEAL from the Superior court of Baltimore city.

*Trespass on the Case,* brought on the 10th of May 1855, by the appellant against the appellee, to recover damages for alleged injuries to the plaintiff's reversionary interest in a certain dwelling-house in the city of Baltimore, by the improper construction of a stable erected by the defendant upon the adjoining lot.

The declaration contains three counts, the second of which complains that the defendant wrongfully erected and caused to be built near to and upon the plaintiff's said messuage and premises, a certain stable for horses, the said defendant then and there omitting and utterly neglecting, in the said erection of said stable, to build a proper southern wall for the support of the same, and the separation thereof from the said messuage of the plaintiff, but making use of the northernmost wall of the said messuage, in the place of and as a substitute for a proper and sufficient wall of the said stable, and the said defendant, in the execution of this wrongful purpose, then and there greatly injured the said wall of the said messuage, by driving into the same divers spikes and nails, and placing against and upon the same divers pieces of timber, joists, boards and planks; and also the said defendant, in and by the building and erection of the stable aforesaid, and in the manner aforesaid, and also by wrongfully using the said stable, and placing and keeping horses therein, against and near the said wall of the said messuage, hath greatly injured the said messuage and lessened the value thereof. By means of which said several premises, the said plaintiff hath been and is greatly prejudiced and aggrieved in her reversionary estate in the said messuage and premises, so in the possession and occupation of her tenant. Plea, *non cul.*

*1st Exception.* Proof was offered that one Mrs. Hyland, was in possession of the house, as the *tenant of,* and *paid rent* therefor to, the *plaintiff;* and also evidence of the *manner* in which the defendant had constructed his stable on the adjoining lot, tending to sustain the allegations in the *nar.* The plaintiff then proved by Henry Myers, that he was a property agent, his business being the buying and selling real

9    v. 13.

estate for others, that the house in question had been in his hands for some months for sale for the plaintiff, and that he was well acquainted with the premises, and had seen the defendant's stable and examined particularly how it was constructed. The plaintiff then asked this witness: "Has any effect been produced upon the marketable value of the plaintiff's house in Calvert street," (mentioned in the declaration,) "by the erection adjoining thereto of the defendant's stable mentioned in the declaration?" To this question the defendant objected, as tending to draw forth matter of opinion, which objection the court (LEE, J.,) sustained, and refused to permit the question to be asked. To this ruling the plaintiff excepted.

*2nd Exception.* Other evidence was then offered by the plaintiff, of a similar character to that contained in the first exception, including the additional fact, that the house was insured in the plaintiff's name, and that the liability to fire was increased by the manner in which the defendant's stable was constructed. The defendant then offered in evidence a deed, dated the 25th of June 1844, from James P. Wilson, the plaintiff's father, to John S. Hollins and Benjamin H. Wilson, conveying the unexpired term of ninety-nine years, with benefit of renewal forever, in a certain lot of ground on Calvert street, in Baltimore, to the grantees, in trust for the use of the grantor for life, with power to him to sell the same and invest the proceeds in other property, and after his death in trust for the proper use, benefit and behoof of Mary Jane Hollins Wilson, his daughter, her executors, administrators and assigns. It further appeared that the grantor, James P. Wilson, died about the time of the Mexican war; that the plaintiff has been of age for some time; and that the defendant had been in treaty for the purchase of the house from the plaintiff, the latter being represented by Mr. John S. Hollins, who acted in the matter as *her agent,* and in that character only, disclaiming all right of sale in himself. The defendant then asked an instruction to the jury:

That if they find from the evidence that the property on north Calvert street, adjoining on the south the stable of the

Wilson *vs.* Hinsley.

defendant, was, and now is, the same property mentioned in the deed offered in evidence by the defendant, then the plaintiff cannot recover in this form of action.

The plaintiff then asked the court to instruct the jury, that if they believe from the evidence that, at the time of committing the grievances complained of in the declaration, Mrs. Hyland was in occupation of the house and lot mentioned in the declaration, as tenant to the plaintiff, and was let into possession by the plaintiff, and paid rent to her, then the plaintiff is not precluded from maintaining this action, by any thing in the defendant's prayer contained, though they should find all the facts hypothetically set forth in said prayer to be true.

The court refused the plaintiff's prayer and granted that of the defendant, with this addition, "and the trustees in said deed who hold the legal estate are the proper parties to bring the suit." To this ruling the plaintiff excepted, and the verdict and judgment being in favor of the defendant, appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*A. W. Machen* for the appellant.

The testimony of Myers in the first exception, as to the diminished value of the premises was erroneously excluded, because in a case like this, where property is injured not only by a nuisance erected near it, but by a direct injury to the property itself, and a wrongful use of it, the proper measure of damage is, by how much less the premises would sell in consequence of the wrongful acts of the defendant, (3 *Wels. Hurls. & Gor.*, 168, 182, *Hosking vs. Phillips,*) and it is difficult to see how this diminished value can be proved, except by the testimony of an *expert*, like Mr. Myers.

After the plaintiff had shown a *prima facie* title to the injured premises, by proof of payment of rent to her by the tenant in occupation, the court below, by granting the defendant's prayer, ruled that the deed from the plaintiff's father to Hollins and Wilson, as trustees, entirely rebutted her case, upon the ground, that her action was grounded on an equita-

ble and not a legal right. This, it is submitted, is a mistake, for—

1st. The receipt of rent from the tenant in possession, gave the plaintiff a good legal title to the reversion against every body, who could not show a legal title in himself; and the defendant, a mere wrong doer, not claiming under one who had the legal estate, could not set up any outstanding estate against the *prima facie* title of the plaintiff. In *Daintry vs. Brocklehurst*, 3 *Wels., Hurls. & Gor.*, 207, this point was directly decided, and the reasons by which it is supported are clearly stated in the judgment of the court, as delivered upon consideration by *Baron Parke*. (See, also, what Baron Parke says, of the previous case of *Day vs. Williams*, in the same court, which was the very case of *cestui que trust* and trustees, and what would and ought to have been the decision there, if the point had been put before the court. *Ibid.*, 210.) The same principle appears also, though not so distinctly, in the case of *Page vs. Hachett*, 10 *Jur.*, 634, where it was held, that a plaintiff might maintain an action for a nuisance to a wharf, which he alleged himself to be possessed of, by evidence of general user, although the defendant gave in evidence a lease to the plaintiff from the owner, granting him an *easement* in the wharf merely and not an estate. So in respect of personal chattels, it has been held in this State, that a defendant in trover, who has meddled with negroes in the possession of the plaintiff, cannot be permitted to show that the title at the time of the conversion was not in the plaintiff, and was outstanding in a third party. *Harker vs. Dement*, 9 *Gill*, 12, where Archer C. J. and Le Grand A. J., held at the trial, that the *jus tertii* could not be set up by the defendant, and this ruling was affirmed in the Court of Appeals. And this doctrine stands on the same principle, on which a person in possession is held to have a good title against every body except the legal owner of the estate. In an action against a wrong doer, a plaintiff who is in possession, whether directly or mediately through his tenant, stands like a *defendant in ejectment*. The plaintiff in ejectment is put to proof of title, because his action admits the possession of the defendant, and

possession is *prima facie* evidence of title; and a plaintiff in an action against a wrong doer, is entitled to the same presumption when he has once brought proof of his possession. *Gardner vs. Heartt*, 2 *Barb.*, 169, 170. The possession of a tenant is the possession of his landlord. *Angell on Lim.*, 418, *sec.* 13. Other analogies of the law may be instanced. Thus an action for use and occupation, may be maintained against one who has paid rent to the plaintiff, although the latter, in proving his own case at the trial, disclose the fact that he has but an equitable estate. 11 *Adol. & Ellis*, 335, *Dolby vs. Iles.* And that an action for use and occupation may be supported on an equitable title, where such determination is agreeable to the obvious justice of the case, appears also from *Hall vs. Vaughan*, 6 *Price*, 157, 167.

2nd. The instruction was erroneous in assuming many facts, which ought at all events to have been passed upon by the jury. It assumes 1st, that James P. Wilson was possessed of the premises at the time of executing the deed, of which there is not any evidence, and the plaintiff did not profess to claim under him, (1 *H. & J.*, 153, *Lowes vs. Holbrook;*) 2nd, that the plaintiff derived title under the deed and not adversely to it; 3rd, that the plaintiff is the daughter of James P. Wilson, a fact constituting the only ground the defendant pretended to advance for the inference, that the plaintiff claimed under him; and 4th, the facts of the existence, execution and delivery of the deed. The deed was produced by the *defendant*, and John S. Hollins' conduct is some evidence that there was no delivery. 1 *H. & J.*, 323, *Clarke vs. Ray.* 6 *Md. Rep.*, 86, 88, *Barry vs. Hoffman.* 3 *Md. Rep.*, 67, 73, *Stewart vs. Redditt.*

3rd. The jury ought not to have been debarred from presuming a conveyance from the trustees to the plaintiff, the more especially as it was their duty to make such conveyance if required by her, and that it had been required, might legitimately have been inferred from her absolute and exclusive use and enjoyment of the property, and dealing with it in all respects as owner. *Best on Presumptions, sec.* 112.

Wilson *vs.* Hinsley.

4th. The trust may be regarded as expiring at the death of Mr. Wilson; it is not the case of a trust for the sole and separate use of a married woman. 3 *Md. Rep.*, 505, *Ware vs. Richardson.*

5th. Even supposing the deed to have been admissible in evidence, the plaintiff's *prima facie* title was not rebutted by it. Her perception of rent from the person in possession was *prima facie* evidence of a *seisin in fee.* *Best on Presumptions, sec.* 76. Hence an outstanding *leasehold* interest in another did not necessarily divest her of the reversion which she had proven, but, on the contrary, was quite consistent with *some* reversion in her.

*Wm. Pinkney Whyte* for the appellee:

The question asked the witness, Myers, in the first exception, was simply, whether the erection of the stable as a stable had not produced an effect upon the marketable value of the house in question? In this form it was clearly inadmissible because of *irrelevancy.* The matter in issue under the *pleadings,* was not whether the property had depreciated by reason of the erection of a *stable* next to it, but whether in the construction of that stable any acts had been done by the defendant or his servants, which had damaged the reversionary interest of the owner thereof, and the evidence was to be confined to the amount of damages occasioned by the special acts complained of in the declaration, in *the construction of the stable,* and in the use of the wall of the dwelling-house in question. This view is so clear upon the general principles which govern the admissibility of evidence, that no authority need be cited to sustain it.

The defendant's prayer in the second exception was properly granted, because the plaintiff was merely a *cestui que trust,* and had only an equitable interest in the house and lot, and, therefore, no right to sue in a court of common law, any person for any wrong done to her equitable interest, unless she was in actual possession of the house. 1 *Chitty's Pl.,* 360. The trustee should bring all actions respecting the trust estate in a court of law, the *cestui que trust,* though the absolute

owner in equity being at law regarded, as a general rule, in the light of a stranger. *Lewin on Trusts,* 248. *Sanders on uses & Trusts,* 252. This general principle of the law of pleading, has been frequently recognised in this court, and even in relation to actions at law, which are *quasi* equitable in their nature. 3 *G. & J.,* 393, *Green vs Johnson.* 3 *Gill,* 163, *Dugan vs. Gittings.* In actions of ejectment the principle is well settled. *Lewin on Trusts,* 591. 7 *Term Rep.,* 47, *Goodtitle vs. Jones.* In order therefore to relieve himself from the effect of these decisions, the appellant's counsel contends, that the receipt of rent gave to the plaintiff a *prima facie* title to the reversion, and to sustain the principle, cites the authorities in 3 *Wels., Hurls. & Gor.,* 207, and others. These cases have no analogy to the case at bar, for here the *prima facie* title is rebutted, not by an outstanding title in a stranger but by actual proof of the plaintiff's *own title* being an *equitable* one only, which she confirmed by her own testimony, showing the death of her father prior to the bringing of this suit. The receipt of rents, therefor, when explained by proof of her equitable title, is entirely consistent with that title, and is no fact from which an adverse legal title could be inferred. Although in some cases a surrender of a legal estate may be presumed, yet there must be reasonable ground. 7 *Term Rep.,* 47. The principle is fully stated in *Best on Presumptions,* in 47 *Law Lib.,* 159.

Le Grand, C. J., delivered the opinion of this court.

This is an action of trespass on the case, brought by the appellant against the appellee, to recover damages alleged to have been inflicted on her reversionary interest in a certain house, in the city of Baltimore, by the manner in which he built a stable adjoining it; the particular damage complained of being, the driving into the northern wall of her house certain spikes, by which the southern side of his stable was upheld and supported, and in the over-lapping of a portion of her northern wall, and the placing upon its top and adjoining roof, tin, &c.

The plaintiff to prove her case, gave evidence that at the

time, and before the happening of the acts complained of, her tenant was in the possession of the house, for which, the latter as tenant, paid rent. She also gave testimony, that spikes had been inserted into her wall, and tin placed upon a portion of her wall and roof by the defendant. The plaintiff then asked the witness, Myers, the following question: "Has any effect been produced upon the marketable value of the plaintiff's house in Calvert street, by the erection adjoining thereto of the defendant's stable mentioned in the declaration?" The court refused to allow the question to be put, and this constitutes the plaintiff's first bill of exceptions. Perhaps it would have been the more advisable course to have withheld the objection to the admissibility of the evidence, or taken it subject to exception, until all the testimony in the cause had been received; but, as it was the right of the counsel of the defendant to object at the time of the offer, it was the obligation of the court to decide it at that time, and we concur with it in the propriety of its rejection. It was competent to the plaintiff to show by evidence, that the marketable value of the house had been diminished by the injury complained of, to wit, the driving of the spikes and the over-lapping of her wall, but not by the erection of a stable adjoining her property. The erection of a stable in a particular place, may, or may not, affect the marketable value in the neighborhood. But this is not the injury complained of in this case; it is the *manner* of its erection in the use and injury of the house of the plaintiff. Had the question been so confined, it would have been proper.

In addition to the evidence contained in the first bill of exceptions of the plaintiff, testimony of a similar character to it was offered by the plaintiff, with the additional fact, that the plaintiff had effected, in her own name, an insurance on the house. The defendant to support the issue joined on his part, offered in evidence a paper purporting to be a deed of trust, dated the 25th June 1844, from James P. Wilson to John Smith Hollins and Benjamin H. Wilson, by which the grantor reserves to himself during life, the right to sell and dispose of the house in question, but if he should fail to do so, then, and in that event, "in trust for the proper use, benefit

and behoof of Mary Jane Hollins Wilson, the daughter of the party of the first part, her executors, administrators and assigns, and to, for and upon no other use, trust, interest or purpose whatsoever." The defendant also gave evidence by a witness, that he believed the signature, J. P. Wilson, to be the genuine hand-writing of James P. Wilson, father of plaintiff.

On this state of case, the plaintiff and the defendant, each asked an instruction from the court to the jury, the former of which was refused, and the latter granted with an addition.

The instruction given, substantially told the jury, that if they believed the house alleged to have been damaged, was the same as that mentioned in the paper given in evidence by the defendant, that then the plaintiff could not recover, and, that the trustees mentioned in that deed were the proper parties to bring the action. The prayer of the plaintiff denied, that even if the facts contained in the prayer of the defendant, and the instruction of the court, were found by the jury, the plaintiff was precluded from maintaining her action.

Both the prayer of the defendant and the instruction given by the court were erroneous. They were so because they assumed the existence of several facts, which, on their very hypothesis, ought to have been found by the jury. Besides this, they were wrong for other and stronger reasons. The jury might well believe that the house, the ownership of which was claimed by the plaintiff, was the same property mentioned in the deed given in evidence by the defendant, and yet that fact would not suffice to defeat the action of the plaintiff. So far as the record shows, the plaintiff *did not claim under that deed,* nor was there evidence that the grantor in it ever had any right to execute any binding instrument like it. For anything this court can see, her title may have been wholly adversary to that claimed by the grantor in the deed.

But apart from these objections to the instruction given, we are of opinion, that on the facts disclosed in this record, the plaintiff could maintain her action. *The defendant set up no title to the property;* he was, confessedly, a wrong-doer. The law is clear, that *the party in possession,* can maintain an ac-

10    v. 13

tion against any one for trespass save the legal owner. This
. doctrine was most distinctly recognized, after mature delibera-
tion, and applied by analogy to a case very similar to the one
before us, by the court of Exchequer, in *Daintry vs. Brockle-
hurst,* 3 *Welsby; Hurlston & Gordon,* 207, 210, and will be
found also to be fully sustained by the authorities collected,
and commented upon in the elaborate opinion in the case of
*Harker, et al., vs. Dement,* 9 *Gill,* 11.

    *Judgment reversed and procedendo awarded.*
 (Decided February 16th, 1859.)