# JOHN T. CARTER vs. MARYLAND AND PENNSYL-VANIA RAILROAD COMPANY.

*Extension of Time for Signing Bills of Exception—Trespass Quare Clausum Fregit—Competency of Evidence to Show Boundary of Land—Right of Party in Possession of Land to Maintain Trespass—Title in Third Party—Admissibility in Evidence of Plat of Land—Evidence of Experts as to Amount of Loss—Liability of Railway Company for Setting Timber Land on Fire—Damages.*

The trial Court has the power to grant successive extensions of the time allowed for the signing of bills of exception when the first extension is made before the end of the term of Court at which the case was tried, and each subsequent extension is granted before the expiration of the time fixed by the preceding order extending the time.

A deed described the land conveyed as being tracts having certain names and as containing a designated number of acres. A part of the land was unenclosed woodland. In an action of trespass *q. c. f.* the grantee testified that he exercised acts of ownership over certain land as belonging to the farm conveyed under his deed. Another witness who lived in the neighborhood and had known the land for more than fifty

years, testified that a certain line marked one of its boundaries, and that this had been pointed out to him as such forty years previously by a former owner of the tract; and another witness, who had been acquainted with the land for thirty years, testified to the same effect. *Held,* that this evidence, documentary and oral, is legally sufficient to show that the plaintiff had such possession of the land as entitled him to maintain the action.

It is not necessary for the plaintiff in an action of trespass *q. c. f.* to show either an actual possession of the land under a paper title or an adverse one in the strict sense of that term, but a constructive possession will be sufficient. This is especially true when the action is against a tort feasor setting up no claim of title in himself to the land.

In an action against a railway company to recover damages for the burning of timber, fencing, etc., on plaintiff's farm by a fire started by sparks from a passing locomotive, the plaintiff offered in evidence a deed and a survey showing that forty-two acres of land belonging to him had been so burned over, while, according to the survey made by the defendant, only about twenty-nine acres of the land burned over were owned by the plaintiff. The defendant also offered in evidence two deeds made in 1805, conveying a part of the burned-over timber land to persons other than those under whom plaintiff claimed. *Held,* that this evidence is not admissible to show that the plaintiff did not own the land he claimed, since the deeds merely showed that at the time of their execution such conveyances had been made, and is not accompanied by evidence to show that at the time of the fire the title to that part of the land was not in the plaintiff.

In an action of trespass by the plaintiff in actual possession of land against a wrongdoer, the defendant cannot set up in bar of the action or in mitigation of damages, that the title to the land was in a third party under whom the defendant does not claim.

A plat of a tract of land is not admissible in evidence to prove boundaries when unaccompanied by any evidence as to who made it, or when it was made, or as to its correctness.

In an action against a railway company to recover damages for having started a fire which burned over plaintiff's timber land, the evidence of practical lumbermen, who had examined the burned area, as to their estimates of the amount of the loss in dollars is inadmissible, since that is the opinion of experts as to the precise question which was to be determined by the jury.

If a railway company negligently permits sedge grass and other material likely to be ignited by sparks from locomotives to remain on its right of way, and this material is set on fire by a passing engine, and the fire is communicated to adjoining property as a natural and direct consequence, the railway company is liable therefor, although it was not negligent in the management of the engine.

In an action against a railway company for negligently setting on fire plaintiff's timber land, he is entitled to recover, in addition to the damage to the timber and fences, the value of certain posts and rails piled on the land which were in his possession.

*Decided February 11th, 1910.*

Appeal from the Circuit Court for Baltimore County (DUNCAN, J.).

The prayers referred to in the opinion of the Court are as follows:

*Plaintiff's 1st Prayer.*—The jury are instructed that it was the duty of the defendant to keep its railroad tracks and right of way clear of combustible materials; and if the jury find that the defendant negligently permitted sedge grass and weeds and bushes likely to be ignited from sparks issuing from its engine to be and remain upon its right of way between the Wysong Trestle and the old Preston Mill Buildings, and that on the 25th of April, 1906, said grass and weeds were set on fire by one of the defendant's engines; and further find that said fire was carried by the wind through said grass and weeds to and set on fire said buildings and from said buildings carried across Deer Creek to the plain-

tiff's woodland as testified to by his witnesses, and burned it, then the plaintiff is entitled to recover in this action even though the jury believe that the defendant was not negligent in its management and use of the said engine. (*Granted in connection with the defendant's 2nd prayer.*)

*Plaintiff's 2nd Prayer.*—If the jury find that the property along the defendant's railroad, between the Wysong trestle and old buildings on the Preston Mill property, was, on the 25th day of April, 1906, set on fire by one of the defendant's engines, then such fire is *prima facie* evidence of negligence; and if the jury find that said fire was by reason of the wind, and grass and bushes on said property communicated to and set on fire said buildings and from said buildings communicated to the plaintiff's woodland and the same burned as the approximate cause thereof as testified by the plaintiff's witnesses, then the plaintiff is entitled to recover in this action, unless the jury is satisfied by preponderating proof that the injury complained of was occasioned without any negligence on the part of the defendant or its agents. (*Granted.*)

*Plaintiff's 3rd Prayer.*—If the jury find their verdict for the plaintiff then they are instructed to allow him such sum of money as they believe from the evidence will fully compensate him for all damages he has sustained as the direct result of the injury to his woodland and fences. (*Granted.*)

*Plaintiff's 4th Prayer.*—If the jury find their verdict for the plaintiff then he is entitled to recover, in addition to any injury they may find he has sustained from the burning of the timber and fences the value of any posts and rails they find were in his possession and destroyed by the fire referred to in this case, as testified to by his witnesses. (*Refused.*)

*Plaintiff's 5th Prayer.*—If the jury find their verdict for the plaintiff, and further find that the deed to the plaintiff, dated the 13th December, 1902, given in evidence, included the woodland referred to in this case lying east of Deer Creek, south of the Cherry Hill road and west of the lines testified to by Harrison Ayers and James Crowl as the division lines between the Rutledge and Rigdon or *Witz* lands, containing

forty-two acres, two perches and twenty-four square roods as shown upon the plat of James W. McNabb, offered in evidence, as part of the land thereby conveyed; and that the plaintiff took possession thereof by virtue of said deed and held the same at the time of the fire referred to in this case, then he is entitled to recover all the damages he has sustained (if any) to said woodland, and to any fences thereon, caused by said fire, and the deeds, and the plat, and evidence of Walter E. Sommerville, given in evidence by the defendant, are no bar to the plaintiff's right to recover said damages.    (*Refused.*)

*Plaintiff's 6th Prayer.*—If the jury find that the woodland lying east of Deer Creek, south of the Cherry Hill road and west of the lines testified to by Harrison Ayres and James Crowl as the division lines between the Rutledge and Rigdon or *Witz* lands, in Harford County, containing as shown upon the plat of James W. McNabb (given in evidence) forty-two acres, two perches and twenty-four square roods was in the possession of Joshua Rutledge as devisee under the sixth clause of the will of his father, Ignatius Rutledge, dated the 5th day of November, 1874 (given in evidence), during his life, and after his death in the possession of his wife, Phoebe Rutledge, as devisee under the first clause of his will, dated the 15th day of June, 1892 (given in evidence), and that said possession was uninterrupted, adverse and exclusive for twenty years, then such possession created a good and sufficient legal title; and further find the deed to the plaintiff of the Rutledge property, dated the 13th December, 1902 (given in evidence), and that the plaintiff entered upon and took possession of said woodland under said deed, then he acquired a good legal title thereto as well as the possession thereof; and the deeds, and the plat, and the testimony of Walter E. Sommerville, given in evidence on behalf of the defendant, cannot affect the plaintiff's said title and possession, and are no defence to his right to recover in the action for all damages the jury find (if any) was done to said en-

tire tract of woodland and the fences thereon by the fire re-·
ferred to in this case. (*Refused.*)

*Plaintiff's 7th Prayer.*—If the jury find their verdict for
the plaintiff; and further find that the plaintiff was at the
time of the fire referred to in this case, in possession of the
woodland lying east of Deer Creek, south of the Cherry Hill
road and west of the lines testified to by Harrison Ayres and
James Crowl as the division lines between the Rutledge and
Rigdon or *Witz* properties, in Harford County, containing
on the plat of James McNabb (given in evidence), forty-two
acres, two perches and twenty-four square roods, claiming
title thereto under the deed to him, dated 13th December,
1902 (given in evidence), as part of the property thereby
conveyed, and using it as his own property, then the plaintiff
is entitled to recover all the damages he has sustained (if
any) to said woodland and to any fences thereon caused by
said fire, and the deeds and the plat, and the evidence of
Walter E. Sommerville, given in evidence by the defendant
are no bar to the plaintiff's right to recover said damages.
(*Refused.*)

*Defendant's 1st Prayer.*—If the jury find from the evi-
dence that the tracks and roadbed of the defendant between
Preston's Mill and Wysong's Trestle were kept with reason-
able care and diligence during the month of April, in the
year 1906, and that the first train moving northerly on the
morning of April 25th in said year was operated with rea-
sonable care and diligence, and that the engine of said train
was in good order and entirely fit for service, and was pro-
vided with as good an ash pan and spark arrester as is known
to railway people, and the same had been inspected regularly
with reasonable care and diligence, and that an inspection
thereof was made on the evening of same date and said en-
gine was found to be in good condition and fit to be operated,
and that the coal used by said engine was as good as could be
gotten on the market, then the defendant is not liable for
the damages resulting from the fire which started on said
date along the railway tracks near Preston's Mill, even though

the jury believe the same was started by defendant's engine, and their verdict must be in favor of the defendant. (*Granted.*)

*Defendant's 2nd Prayer.*—Even if the jury find that the fire mentioned in the declaration was started by the negligence of the defendant, yet if the jury further find that on the day of the fire there was a high wind and that between the railroad's right of way and Deer Creek on the lands of Preston, there was a great quantity of sedge grass, briars and other filth and also several abandoned buildings in a state of decay, all of which was very dry and combustible to which the fire spread and that by reason of said wind, burning matter from said building was carried across the creek to the plaintiff's lands, then these are facts which the jury are at liberty to consider in connection with all the facts in the case in determining whether the spreading of said fire to the plaintiff's lands was the natural and direct consequence of the starting of said fire by the defendant, and if the jury find that the burning of the plaintiff's timber was not the natural and direct result of said fire having started in the sedge grass on Preston's land, then the defendant is not liable in this action, and their verdict must be for the defendant. (*Granted.*)

*Defendant's 3rd Prayer.*—That in passing on the issues in this case to entitle the plaintiff to recover, it is incumbent on him to show by a preponderance of proof that the fire of May 25th, 1906, which is alleged to have caused the injury to the plaintiff, was started by the defendant operating its train near said premises, and there is no presumption either in law or in fact that the fire was originated or caused by the defendant. (*Granted.*)

*Defendant's 4th Prayer.*—If the jury find the deed from Harlan and others to the plaintiff offered in evidence by the plaintiff, and also deeds from Gibson and Wheeler to Rutledge and Wheeler respectively, offered in evidence by the defendant, then that part of the tract of land called the "Garden Fence" containing thirty-four and one-half acres, which

is excepted from the operation of the said deed to Rutledge, and conveyed by said deed to Wheeler did not pass under the said first named deed, and if the jury further find that about twenty-two acres of said excepted part of the said tract called the "Garden Fence" lies within the limits of the burned area, damage to which is claimed by the plaintiff, then the jury should not allow the plaintiff for any damage to the freehold including the growing timber and fences on said twenty-two acres, should they find such damage. (*Granted.*)

*Defendant's 5th Prayer.*—If the jury finds that the posts and rails piled in the woods, for the burning of which the plaintiff claims, were not bought by the plaintiff from the executors of Phoebe Rutledge, deceased, then the plaintiff is not entitled to recover the value of said posts and rails, and if the jury find their verdict in favor of the plaintiff, they should not allow for the loss thereof. (*Granted.*)

*Defendant's 6th Prayer.*—That under the pleadings and evidence in this case, there is no legally sufficient evidence entitling the plaintiff to recover, and the verdict must be for the defendant. (*Refused.*)

The cause was argued before BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Wm. Pepper Constable* and *James J. Archer* (with whom was *Elmer J. Cook* on the brief), for the appellant.

*D. G. McIntosh* and *S. A. Williams* (with whom was *Fred. R. Williams* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant, John T. Carter, recovered a judgment against the appellee company in an action of trespass in the Circuit Court for Baltimore County. The suit was brought in the Circuit Court for Harford County and was, in the first instance, tried there. A new trial having been granted the case was removed to Baltimore County where, upon a

second trial had in November, 1908, the plaintiff secured a verdict, upon which the judgment was entered, on May 8th, 1909, from which he took the present appeal.

The appellee moved, in this Court, to dismiss the appeal for error in passing orders extending the time for signing and filing the bills of exception in the lower Court.

It appears from the record that after the rendition of the verdict a motion for a new trial was made by the defendant which was not acted on until May 8th, 1909. While that motion was pending and before the expiration of the term at which the case was tried, the Court passed an order extending the time for signing and filing the bills of exception for thirty days, and before the expiration of that period passed another order for the further extension of the time until the expiration of thirty days after the decision of the motion for a new trial. After that motion had been overruled and the judgment entered, the time for signing and filing the bills was extended by successive orders until September 15, 1909, previous to which date they were duly signed and filed. Each one of these orders was signed before the expiration of the last previous one so that there was no break or gap in the total period of the extension of the time.

We do not think that the Court below exceeded its power in granting these extensions of time. As no rule of that Court regulating this subject appears in the record we assume that none exists. Under the ordinary practice although the exception to a ruling of the Court must be taken at the time the ruling is made it is neither usual nor necessary to prepare the bills of exceptions or have them signed until after the trial at some convenient time during the term at which the case is tried; unless otherwise specially ordered by the Court, which may by an order passed during the term extend the time beyond its expiration. The bills may also be prepared and signed after the expiration of the term by consent of the parties to the case. *Poe's Practice,* sec. 319; *Wheeler* v. *Briscoe,* 44 Md. 308; *State* v. *Kent Co.,* 83 Md. 383.

Although this Court has repeatedly emphasized the importance of having bills of exception prepared and signed promptly while the recollection of the facts involved in them is fresh in the minds of the Court and counsel, it has in several cases recognized the power of the Court below to grant successive extensions of time for that purpose where the first extension is made before the expiration of the term and each subsequent one is granted before the expiration of the next preceding one. *Gottlieb* v. *Wolf,* 75 Md. 126; *Edelhoff* v. *Horner-Miller Mfg. Co.,* 86 Md. 606; *Horner* v. *Buck,* 48 Md. 369. It has also been held by our predecessors that the subject of the time and circumstances of signing the bills of exception "is a matter under the control of the inferior Court whose ruling cannot be revised on appeal." *Andre* v. *Bodman,* 13 Md. 256-7; *Wheeler* v. *Briscoe,* 44 Md. 311; *Roloson* v. *Carson,* 8 Md. 226.

Turning now to the consideration of the issues presented by the appeal, it appears from the record that the cause of action was the burning of timber and fencing on Mr. Carter's farm by a fire alleged to have been started by sparks or cinders emitted from the locomotive of a passing train of the appellee. According to a survey, made after the fire for Mr. Carter, it had burned over slightly more than 42 acres of timber, while according to a survey similarly made for the railroad company by Mr. Sommerville only about 29. acres had been burned over. The difference between the results of the two surveys was owing to a dispute as to the eastern boundary of Carter's land.

Mr. Carter claims title to his farm under a deed to him, from J. Edwin Webster *et al.,* trustees and executors of Phoebe S. Rutledge, and others, dated December 13th, 1902, in which the land conveyed is described as follows: "All that certain farm of which Joshua Rutledge, late of said (Harford) county died seized, situated partly in the fifth and partly in the third election district of said county near the rocks of Deer Creek, composed of parts of several tracts of land called "Roberts Garden," "Garden Fence," ("Roberts

Venture enlarged"), "Best Endeavor," "Graftons Addition," "Timber Ridge" or by whatsoever name or names the same may be known or called, containing about three hundred and seventy-five acres of land, being the same and all the lands conveyed by and described in the following deeds." (Then follow the titles and places of record of four deeds from separate grantors) "and being the same and all the lands devised by the last will of Joshua Rutledge to the said Phoebe S. Rutledge," etc.

According to the recitals in the deed the land had descended from Monica Rutledge, who purchased it in 1805, to her two sons Ignatius and John W. Rutledge. Ignatius having purchased his brother's interest in the farm entered upon and occupied the same until his death, and by his last will devised it to his son Joshua Rutledge describing it in his will as "the farm whereon I now reside containing about four hundred acres which lies on both sides of Deer Creek." Joshua Rutledge devised his entire estate to his wife Phoebe S. for life with remainder to other persons, but the farm was sold under a bill filed by his creditors and purchased by his widow Phoebe S. and was sold after her death by her executors and others to the plaintiff, Carter, and conveyed to him by the deed of December 13th, 1902, already mentioned.

Mr. Carter took possession of and occupied the farm after its purchase by him and it was in his occupancy at the time the timber was burned. The timber land was unenclosed on its eastern side where it abutted on what is described in the evidence as the "Witz Land." Carter, himself, testified that he had used this timber land to cut firewood out of it, that there was no doubt in his mind that it belonged to the farm and that no one ever questioned his use of it.

Harrison Ayers, eighty-four years old, who lived "close by" the property and had known it for more than fifty years, testified that thirty-five or forty years ago the line which Mr. Carter now claims to be the true eastern boundary of his farm had been pointed out to the witness by Ignatius Rutledge who then owned the farm and Mr. Rigdon who then

owned the Witz land as the division line between their lands. The witness further testified that he had pointed out the line to the surveyor McNabb when he made the survey of the burned timber land for the plaintiff after the fire showing him the oak tree which Mr. Rutledge and Mr. Rigdon had pointed out as marking their division line.

, James Crowl, who had known the property for thirty or forty years, testified that the division line between the Rutledge and Witz lands was correctly located on the plaintiff's plat prepared by Mr. McNabb. He further testified that twenty-eight or thirty years ago when Mrs. Witz got the Rigdon property, there was some feeling between the owners of the two farms as to the location of their division line and they had the line run as it is now located on the plat made by McNabb and that the witness has known the line ever since it was then run.

The evidence documentary and oral to which we have referred, constituted legally sufficient evidence of the plaintiff's possession of the 42 acres of burned timber land to enable him to maintain the present action. Although the gist of the action of trespass is the injury done to the plaintiff's possession, it is not necessary for him to show either an actual possession under a paper title or an adverse one in the strict sense of that term, a constructive possession will answer the purpose. This is especially true where the action is against a tortfeasor setting up no claim of title in himself to the land. *Poe's Pleading,* sec. 257; *Tyson* v. *Shuey,* 5 Md. 540; *Miller* v. *Miller,* 41 Md. 631; *Gent* v. *Lynch,* 23 Md. 58; *Wilson.* v. *Hinsley,* 13 Md. 64; *Blaen Avon Coal Co.* v. *McCulloh,* 59 Md. 416; *New Windsor* v. *Stocksdale,* 95 Md. 196.

In *Gent* v. *Lynch, supra,* where the action was trespass *quare clausum fregit,* it is said, on page 65 of the opinion: "Though at one time it was doubtful whether the action of trespass *q. c. f.* would lie at all where there was no actual possession, and the *locus in quo* was in a wild and unoccupied state, yet it has long been settled in this country, from the

necessity of the case, not that the action will lie without possession, but that it wil lie upon that possession which the law implies to be in the owner of land, when no other person is in fact, on it.    In such cases the owner has constructively the possession (citing *Cohorn* v. *Simmons,* 7 Iredell, 190).  This is the meaning of the general expression used by the Court in *Norwood* v. *Shipley,* 1 H. & J. 295, and in several other cases cited in argument; that in order to maintain the action, it is necessary for the plaintiff to prove title to the land or that he was in actual possession at the time of the alleged trespass."

The plaintiff also offered evidence tending to prove that the fire which injured his timber had been started by the defendant's locomotive, and other evidence tending to show the value of the property before and after the fire and also the value of certain posts and rails cut and piled in the timber which were consumed by the fire.

The defendant, in order to prove that the legal title to part of the burned timber-land was not in the plaintiff, was permitted to put in evidence over the plaintiff's objection two deeds made in 1805 by John L. Gibson *et al.* the one to Monica Rutledge and the other to Francis I. Wheeler.   To that ruling of the Court the plaintiff took his sixth exception. The deed from Gibson to Monica Rutledge is one of the four deeds referred to for the source of the grantor's title in the conveyance from Edwin Webster *et al.* under which Carter acquired title to his farm in 1902.   It appears on the face of the Gibson deed to Monica Rutledge that a lot of 34 acres therein described by metes and bounds was reserved out of the tract called "Garden Fence" thereby conveyed.   The deed from Gibson to Francis I. Wheeler conveyed to her the lot of 34 acres reserved out of the conveyance to Monica Rutledge under whom the plaintiff claims title.

The defendant further offered the evidence of W. E. Sommerville a surveyor together with a plat made by him after the fire from an actual survey tending to show that about 22 acres of the burned timber-land claimed by the plaintiff are

included in the 34 acre lot which was excepted from the grant to Monica Rutledge under which he claimed title.

We think the learned Judge below erred in admitting in evidence the two deeds of 1805 from John L. Gibson. At most they tended to prove only that Monica Rutledge did not acquire from John L. Gibson by the deed of 1805 the parcel of 34 acres of "Garden Fence" excepted by its terms from the grant thereby made and that those 34 acres were *at that time* conveyed to Francis I. Wheeler. In the absence of proof of what land was conveyed by the three other deeds, referred to as sources of the grantor's title, in the deed of the farm to Carter, and unaccompanied by any evidence or offer of evidence tending to prove that the title to so much of the 34 acres as Carter claimed to own was in someone else at the time of the fire, the two deeds objected to should not have been permitted to go to the jury, to prove a want of either title or possession in the plaintiff at the time of the fire. Furthermore it has been often held by us that where the plaintiff has shown a sufficient possession of the land in controversy in himself to enable him to sue, the defendant, claiming no title to the property but standing in the attitude of a wrongdoer would not be permitted to show title to the premises in a third party either in defense of the action or in mitigation of damages. Or, as the same principle has sometimes been stated, the party in possession can maintain an action of trespass against anyone except the legal owner. *Harker* v. *Dement,* 9 Gill, 12; *Blaen Avon Co.* v. *McCulloh, supra; Wilson* v. *Hinsley,* 13 Md. 73-4; *New Windsor* v. *Stocksdale, supra,* at pages 208-9.

The seventh exception was taken to the admission in evidence of a plat dated 1805 purporting to show the outlines of "Roberts Garden" and "Garden Fence." The plat was produced on behalf of the defendant by the witness Sommerville who testified that he had received it from Wm. T. Clark, a former surveyor of Harford County about 74 years old, but he did not know who made it or the circumstances under which it was made or where Mr. Clark got it or whether it

was correct or not when made or in whose custody it had been since then.   This plat was exhibited to us at the hearing of the appeal.   It certainly has an ancient appearance, but it bears on its face no indication of who made it or whence it came or whether it is an original or a mere copy.   In view of these circumstances and the very meagre character of the evidence produced to authenticate it the Court erred in admitting it in evidence as an ancient document.

The first five exceptions relate to testimony for the defendant, which was admitted over the plaintiff's objection, for the purpose of showing the extent of the damage caused by the fire.   These exceptions, which are of similar import, were taken to the testimony of the witnesses Sillik, Deckman and Dennis Carter, who were practical lumbermen each of whom had examined the burnt area.   The portions of their testimony excepted to consisted of expressions of opinion or estimates by them respectively as to the amount of the loss stated in dollars.   Some of the estimates were in gross and some were per acre, but they were all opinions of the witnesses as to the amount of the loss caused by the fire.   This testimony was in essence expert testimony, consisting of the opinion of the witness expressed in exact figures, as to the amount of damage that being the very question upon which the jury were to pass from a consideration of the whole case. We have held that kind of testimony to be inadmissible in so many recent cases that it would serve no good purpose to again enlarge upon the reasons which led us to that conclusion.   Those reasons have been stated in *Stumore* v. *Shaw,* 68 Md. 19; *Belt R. R. Co.* v. *Sadtler,* 100 Md. 333 and 102 Md. 595; *W. U. Telegraph Co.* v. *Ring,* 102 Md. 681; *Con. Gas Co.* v. *Smith,* 109 Md. 203.

The eighth and last exception was taken to the Court's action on the prayers.   At the close of the case the plaintiff offered seven prayers of which the Court granted the second and third as offered and granted the first in connection with the defendant's second prayer.   It refused the fourth, fifth, sixth and seventh.   The defendant offered six prayers all of

which the Court granted except the sixth which it refused. The prayers will be set out by the Reporter in his report of the case.

. The plaintiff's first and second prayers and the defendant's first, second and third ones all deal with the question of the defendant's liability for the damage caused by the fire in case the jury found that its locomotive had started it. · Those prayers taken together fairly state the law upon the subject to which they relate and they were properly granted.

The plaintiff's third and fourth prayers treat of the measure of damages. The third was granted and the fourth rejected. We think both of them should have been granted. The fourth one instructed the jury that if they found for the plaintiff they should allow him, in addition to the damage he had suffered from the burning of his timber and fences, the value of any posts and rails they found to have been in his possession and destroyed by the fire. The plaintiff testified that when he bought the farm he found some fence posts and rails cut and piled up on the timber-land and that he had used some of them and that the remainder had been consumed by the fire. Although the evidence did not show that he had purchased these posts and rails, apart from his purchase of the farm or that he owned them, it did show that he had such possession of them as to entitle him, under the cases we have cited, to maintain this action against the defendant for their value, their loss having been specially alleged in the declaration.

· The plaintiff's fifth and seventh prayers, which were rejected should have been granted as they were both predicated upon the finding by the jury that the plaintiff was in possession of the burned timber-land at the time of the fire claiming to own it under the deed to him of December, 1902, from J. Edwin Webster, trustee, *et al.*

·The statement, appearing at the end of the plaintiff's fifth and seventh prayers, that the deeds, plat and testimony of W. E. Sommerville given in evidence for the defendant are no bar to the plaintiff's right of recovery should have been

omitted. We have held that the deeds there referred to and the alleged ancient plat should not have been admitted in evidence but the jury were entitled to consider the plat made by Sommerville and his testimony in determining the true location, upon the ground, of the eastern boundary of the plaintiff's farm, although that plat and evidence did not constitute a bar to the plaintiff's right of recovery.

The plaintiff's sixth prayer was properly refused, as the record does not present legally sufficient evidence to show that the burned land had been in the "uninterrupted, adverse and exclusive" possession of the plaintiff and those under whom he claimed for twenty years prior to the fire.

The defendant's fourth and fifth prayers should have been rejected, as was its sixth prayer, because the instructions contained in all three of those prayers are inconsistent with those given in the prayers which we have already said were or should have been granted.

For the erroneous rulings to which we have referred the judgment appealed from must be reversed and the case remanded for a new trial.

*Judgment reversed with costs and case remanded for a new trial.*