(Decided 13th June, 1888.)

JOSEPH A. RIDGWAY *vs.* ENOCH RIDGWAY and HENRIETTA F. RIDGWAY.

*Verbal agreement for the Sale of Land—Specific Execution—*
*Part performance—Conflicting evidence—Laches.*

Courts of equity will decree the execution of a verbal agreement for the sale of land, where there has been a part performance by one of the parties; but to entitle one to the specific performance of such an agreement, there must be not only clear, definite, and satisfactory proof of the agreement, but also that the acts of part performance relied on were done in pursuance of it.

Where on a bill filed by a son against his father to enforce the execution of a verbal agreement for the sale of a farm, the proof both in regard to the agreement itself, and to the acts of part performance under it, was conflicting and contradictory, and the complainant had delayed bringing the suit for fifteen years, a Court of equity will not interfere to give the relief sought.

APPEAL from the Circuit Court for Prince George's County, in Equity.

This appeal was taken from a decree dismissing the bill of complainant. The case is stated in the opinion of the Court.

Ridgway *vs.* Ridgway.

The cause was argued before ALVEY, C. J., STONE, ROBINSON, BRYAN, and MCSHERRY, J.

*Joseph S. Wilson*, for the appellant.

The contract which is attempted to be enforced in this case, is fair, just, reasonable, *bona fide*, mutual and certain in all its parts, and the testimony in the case comes up to the measure of proof, which has been recognized by this Court as sufficient to authorize a Court of equity to enforce the specific performance of the contract.

The payment of the purchase money, by signing the deed of the Washington lot, and the change of possession, will relieve the parol agreement from the operation of the Statute of Frauds. *Dugan, et al. vs. Gittings,* 3 *Gill,* 157; *Shepherd vs. Bevin,* 9 *Gill,* 32; *Bechtel vs. Cone,* 52 *Md.,* 698; *Hardesty vs. Richardson,* 44 *Md.,* 617; *Morris vs. Harris,* 9 *Gill,* 20.

Mere inadequacy of price will not avoid a contract in other respects regular, especially between father and son. *Shepherd vs. Bevin,* 9 *Gill,* 39; *Hardesty vs. Richardson,* 44 *Md.,* 617.

*William Stanley,* for the appellee.

The Statute of Frauds is a flat bar, unless such facts be proven, showing part performance, as would exempt said contract from the operation of the Statute. Possession is here alleged and relied upon as such part performance. Does the proof come up to the standard required? It must be plain, just, reasonable, *bona fide* and certain in all its parts. There must be no doubt of the contract *as set out in the bill,* and if wanting in any of these elements it cannot be enforced. *Semmes vs. Worthington,* 38 *Md.,* 317; *Hopkins vs. Roberts,* 54 *Md.,* 312; *Alexander's Brit. Stat.,* 517.

The possession alleged must be a possession by virtue of, in pursuance of, and in consequence of, the alleged

contract of sale.  *Spear vs. Orendorf,* 26 *Md.,* 44; *Rosenthal vs. Freeburger,* 26 *Md.,* 80.

The possession must not be a litigious one.  5 *Waite's Act. & Def.,* 802; 1 *Md. Ch. Dec.,* 123; *Owings vs. Baldwin and Wheeler,* 1 *Md. Ch. Dec.,* 120, *and* 8 *Gill,* 337.

ROBINSON, J., delivered the opinion of the Court.

Before considering the facts, it may be as well to say a word about the law applicable to this case.  The bill is filed by a son against his father to enforce the execution of a *verbal agreement, alleged to have been made fifteen* years ago for the sale of a farm.  To except this agreement from the operation of the Statute of Frauds, which requires all contracts for the sale of land to be reduced to writing, the plaintiff relies on the performance by him of his part of the contract.  Courts of equity will, it is true, decree the execution of a verbal agreement for the sale of land, where there has been a part performance by one of the parties.  The ground on which equity proceeds in such cases is that it would be a fraud to permit the other party, to interpose the Statute as a bar to the execution of an agreement thus partly performed.  In other words, Courts will not permit a statute passed for the purpose of preventing frauds, to be used as an instrument for perpetrating a fraud.  There is a tendency, however, of late to a stricter construction of the Statute, and an indisposition to except cases from its operation beyond well settled decisions.  There is a great deal of force in what Lord REDESDALE said in *Lindsay vs. Lynch,* 2 *Sch. & Lef.,* 4: "The Statute was made for the purpose of preventing frauds and perjuries, and nothing can be more manifest to any person who has been in the habit of practising in Courts of equity, than that the relaxation of that Statute has been the ground of much perjury and

o

much fraud. If the Statute had been rigorously observed, the result would probably have been that fewer instances of parol agreements would have occurred; agreements would from the necessity of the case, have been reduced to writing.'' *Forster vs. Hale*, 3 *Ves.*, 712.

But be this as it may, all agree that to entitle one to the specific performance of a verbal agreement for the sale of land, there must be not only clear, definite, and satisfactory proof of the agreement, but also that the acts of part performance relied on, were done in pursuance of it. *Spear vs. Orendorf*, 26 *Md.*, 44; *Rosenthal vs. Freeburger*, 26 *Md.*, 80.

Now the trouble in this case is, that the proof both in regard to the agreement itself, and the acts of performance under it is conflicting and contradictory. On the part of the plaintiff the proof rests mainly on his own testimony, and that of his wife. And what is it? His father, he says, had a life estate in a lot of ground in Washington, the plaintiff and his brother and sisters, being entitled to the remainder; and his father being anxious to sell the lot in fee, agreed to give him the farm in controversy, provided he would join in the deed to the purchaser, and upon the faith of this agreement he united in the deed. That afterwards he went to Washington where his father lived to get a deed of the farm, and his father said ''it was all right,'' but afterwards he said he had changed his mind, and refused to execute the deed.

The wife says her father-in-law, the defendant, persuaded her to use her influence with her husband to get him to sign the deed of the Washington lot, and promised he would give the farm to her husband if he would sign the deed, and after he signed it, the defendant said her husband should have it.

Then Mrs. Eckloff, the plaintiff's sister, testifies her father paid to her, and to each of her two sisters, five

hundred dollars as a consideration for their joining in the deed of the Washington lot, and that it was understood in the family her brother was to have the farm in question.

In addition to this, the witness, Donaldson, says the defendant five or six years ago requested him to tell the complainant to "come up and get his deed of the farm."

The plaintiff further proved that he was at the time of making the agreement, and has ever since been in possession of the property and has received the rents and profits.

If the case rested here, it might well be said, there was satisfactory proof, both in regard to the agreement and the acts of part performance under it. But then comes the testimony on the other side, which is in direct conflict with that offered by the plaintiff.

The defendant is first examined, and while he admits having paid to each of his daughters five hundred dollars in consideration of their uniting in the deed of the Washington property, he denies emphatically that he ever agreed to pay the plaintiff anything, and says he had already paid for him two thousand dollars, on his two promissory notes to Thomas C. Doon, which, with other money advanced to him, exceeded the value of his interest in the Washington lot. The plaintiff's two notes to Doon he produced and filed as exhibits, having proved the signature of his son, and the endorsement of Doon, the payee, he being dead. He also filed and proved a power of attorney from his son, authorizing the defendant to collect the rents, and also to sell his interest in the Washington lot. This power is dated as far back as 1857.

The witness Wharton, testifies he heard the defendant on one occasion ask his daughter, Mrs. Eckloff, if she ever heard him say that he would give the farm to

Ridgway *vs.* Ridgway.

the complainant, and she replied : "No pap, but if you don't the devil will brand you." At another time, he heard the defendant say to the complainant, "Joe, I have come down to see who owns this farm, you or me," and Joe replied by saying, "pay me what you owe me, and you may have your old farm."

He also proved by his son Mordecai, who also signed the deed for the sale of the Washington lot, that there was no understanding in the family, so far as he knew, that the complainant was to get the farm in question, and further proved that the farm was assessed to him, and that he had regularly paid the taxes thereon, and that his son lived with him on the farm until he removed to Washington, and that he had permitted his son to remain in possession since that time.

The plaintiff in rebuttal denied he ever owed Doon anything, and denied he ever signed the two notes payable to him, and also denied he ever signed the power of attorney.

Now in the face of such conflicting and contradictory testimony, it can hardly be said there is such proof of the agreement and the acts of performance as the law requires, to except it from the operation of the Statute. The whole case is a fair illustration of the wisdom of the Statute in requiring such contracts to be reduced to writing.

And besides, the plaintiff's case is greatly weakened by this long delay of fifteen years. He knew, and had known for years that his father had refused to give him a deed of the farm, and there is no attempt to explain this delay. Ordinarily the relations between the parties might afford some excuse, but unfortunately the relations between the son and his father in this case, were not of such a character as to operate as a restraint in this respect.

*Decree affirmed.*

(Decided 13th June, 1888.)