OAK LAWN CEMETERY *v.* COUNTY COMMIS-
SIONERS OF BALTIMORE COUNTY
[No. 57, January Term, 1938.]

*Decided April 21st, 1938.*

282

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*George E. Robinson*, with whom was *Andrew A. Savin* on the brief, for the appellant.

*James P. Kelley*, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

On April 24, 1903, the Oak Lawn Cemetery of Baltimore County was incorporated under the general laws of this State authorizing the formation of corporations. The certificate of incorporation sets forth that it is created for the purpose of forming, laying out, and maintaining a cemetery in said county, its term of existence being perpetual, its operations to be carried on in Baltimore County, and its principal office being located in Baltimore City. It further sets forth that the corporation has no capital stock and is not conducted for profit. A transcript from the by-laws of the company shows that it is managed by a board of nine trustees, with staggered terms of three years, annually elected by those lot holders who meet the requirements designated in the by-laws.

The property of the company at this time comprises the following tracts of land: (a) A tract acquired in 1904, containing approximately 71 acres; (b) three tracts of land acquired in 1935, containing respectively three-eighths of an acre, 3½ acres and 14 acres, 2 roods and 20 square perches. By the petition, to which reference is hereinafter made, the consideration paid for the several tracts, and the value thereof within five years before

their conversion into or acquirement for cemetery purposes, respectively, is stated as follows: (1) As to the first parcel above mentioned, no consideration passed on the date of the purchase, but the price agreed upon was to be paid from the sale of lots, and was $4,500, its value during the prior five year period being placed at $4,500; (2) as to the three remaining parcels, the purchase prices and prior five year period valuations, respectively, were stated as follows: $500—$300; $4,000—$2,700; $5,250—$4,350. It is further alleged in the petition that all of said lands were purchased and are now held and used for burial purposes in compliance with section 172 of article 23 of the Code; that the same are located wholly within the limits of the cemetery; that they were acquired at their fair value, for the *bona fide* public purpose of a cemetery, and that neither directly nor indirectly is there involved a profit to the organizer or organizers thereof, as provided in subsection 6 of section 7 of article 81, Code (Supp. 1935).

Section 7 of article 81 of the Code (Supp. 1935), designates the various classes of property subject to exemption from state, county, and city taxation, and provides that all such exemptions shall be strictly construed; and subsection 6 of section 7 provides for the exemption of cemetery property as follows: "Graveyards, cemeteries (including burying grounds set apart for the use of any family or belonging to any church or congregation) and cemetery companies which are not operated for pecuniary profit and which do not accumulate profits for any purpose other than the maintenance or improvement of their cemeteries or graveyards as cemeteries or graveyards. To obtain the exemption from taxation allowed by this sub-section the owner or owners of a graveyard or cemetery which do not accumulate profits for any purpose except for the maintenance or improvement of such cemetery or graveyard shall apply to the county commissioners of the county in which such cemetery or graveyard may be located by a written petition, signed and sworn to by such owner or owners, in which petition shall

be stated a brief history of the land or lands composing such cemetery or graveyard, the condition of the titles thereto, from whom obtained, at what price bought and upon what terms, and the particulars of the ownership of such land or lands, and its or their value or values for five years prior to its or their conversion into a cemetery or graveyard; and no such exemption from taxation shall be allowed by said county commissioners unless they be satisfied that the land or lands included in such cemetery or graveyard has been acquired for the purposes of a cemetery or graveyard at its or their fair value, and that the formation of such cemetery or graveyard was a bona fide public purpose and neither directly nor indirectly involved a profit to the organizer or organizers thereof."

In compliance with the above subsection, the company, some time in 1936, made application to the Board of County Commissioners of Baltimore County for exemption from state and county taxation on all of said property. The petition was refused, and thereupon, under the provisions of section 183 of article 81 of the Code (Supp. 1935), the company appealed from the action of the said commissioners to the State Tax Commission, which, after a hearing, on May 26th, 1937, ordered that the action of the county commissioners be reversed, and that an assessment of $23,650 on the cemetery property of the petitioners be abated. From that order the County Commissioners, under the provisions of section 186 (a) of article 81, Code (Supp. 1935), appealed to the Circuit Court for Baltimore County, which court reversed the order of the State Tax Commission and denied the abatement, and, from the order of the Circuit Court reversing the action of the State Tax Commission, this appeal is before us.

A stipulation is embraced in the record to the effect that the testimony before the commission tended to establish the following facts: (a) That the cemetery corporation is not operated for gain or profit, but the funds received by it, over and above expenses, are used for

the maintenance of the cemetery and for no other purpose; (b) that the company has no capital stock, and that no commissions or bonuses are paid to any officer, director or employee; (c) that the trustees or directors are elected by lot holders, as hereinbefore indicated, and receive no compensation; (d) that the management of the company is under the direct supervision of the president, who receives an annual salary of $3,600, and that the other employees consist of a secretary and treasurer, whose annual salary is $1,987.20, a superintendent, three clerks, and laborers, the number of which varies in accordance with the season from eight to eighteen men; (e) that a part of the property recently acquired consists of a colored cemetery which the company proposes to maintain as a cemetery, without disposing of the remaining lots therein, and that in another tract bodies from another cemetery have been reinterred and no revenue is derived from that land by the company; (f) that all funds received by the company, over and above actual expenses, are reserved for the maintenance and perpetual care of the cemetery. Photostatic copies of the rulings of the Commissioner of Internal Revenue, holding the company exempt from federal income and capital stock taxes, supply the only evidence in the record, aside from the certificate of incorporation and the amount of the assessment, in support of the stipulation; and these constituted the record which the commission reviewed. Obviously, however, there was other evidence before the commission, as the memorandum of its opinion recites that 20,000 bodies are now buried in the cemetery, that $12,779, or over fifty per cent of the company's pay roll, was expended for grave diggers and labor in 1935, and that in 1936 $8,263, or over forty per cent of the pay roll, was expended for the same purpose. It also recites that the company has a reserve fund, amounting to $70,000, on investment, for the perpetual maintenance of the cemetery.

A motion to dismiss the appeal from the State Tax Commission, filed in the lower court, was denied, but, as

no objection was raised in this court by the appellant to the action of the lower court in that respect, the ruling on the motion will not be considered here.

At the hearing before the State Tax Commission, under the provisions of subsection (b) of section 185 of article 81, Code (Supp. 1935), three requests for rulings on questions of law submitted by the appellee were rejected as follows: (1) That the commission rule as a matter of law that there was no legally sufficient evidence to entitle the petitioner to the exemption; (2) that the claim must be denied on the ground of laches, because the petitioner submitted up to 1936 to taxation on its property acquired in 1904; and (3) that the testimony of the president of the corporation as to the purpose for which it was organized be rejected because he had been connected with the company for but seventeen years.

A fourth request of the appellee was granted, and by it the commission was asked to rule as a matter of law that the petitioner must establish its claim to exemption by a fair preponderance of evidence that its cemetery is not operated for profit, and that the other conditions justifying exemption exist.

In connection with the above rulings, the appellant requested the commission to rule that, if it found from the evidence that the company was not being operated for pecuniary profit, and did not accumulate profits for any purpose other than the maintenance and perpetual care of the cemetery, that the salaries and wages paid to its officers and employees were not excessive, and did not involve profit to them over actual services rendered, that the lands included in the cemetery were acquired for the purposes of the same at their fair value, and that the formation of the company was for a *bona fide* public purpose, and did not directly nor indirectly involve a profit to the organizers or its directors, officers, or employees, then, as a matter of law, it was entitled to exemption from all assessments for the purposes of state and county taxation.

Section 183 of article 81, Code (Supp. 1935), among

other things provides that any taxpayer claiming to be aggrieved because of an assessment or classification, or refusal to reduce, abate, or modify an assessment or change a classification by the county commissioners, may appeal to the State Tax Commission. And section 184 of the same article provides that upon such appeal the commission shall have full power to try and determine the matter, and to that end take testimony. The commission upon such hearing is vested with authority to assess anew, classify anew, abate, modify, or change the assessment appealed from, upon affirmative evidence justifying its action, or for any error apparent on the face of the proceedings before it.

Under the provisions of section 186 (a), the right of appeal from the action of the commission to the appropriate circuit court for any of the counties, or to the Baltimore City Court in cases arising in said city, is allowed on questions of law only, and, from the rulings of the lower court on such questions the right of appeal to this court arises.

Chapter 226 of the Acts of 1929, which repealed and re-enacted article 81 of the Code, entitled Revenue and Taxes, made no change in respect to the status of the State Tax Commission as a fact-finding body. The commission was originally created by chapter 841 of the Acts of 1914, and it has been uniformly held by this court, since that time, that, under the law of this state, the final decision on assessments of all property in the counties, cities, and towns of the state is specifically conferred upon the commission, and that the courts are without jurisdiction to review its findings upon any questions of fact. *Baltimore v. Ches. & Pot. Tel. Co.*, 131 Md. 50, 101 A. 677; *Fidelity Trust Co. v. Gorman*, 134 Md. 322, 106 A. 847; *Ches. & Pot. Tel. Co. v. State Tax Commn.*, 158 Md. 512, 148 A. 832; *Postal Tel. Cable Co. v. Harford County*, 131 Md. 96, 101 A. 600; *Schluderberg etc. Co. v. Baltimore*, 151 Md. 603, 135 A. 412.

Dealing with the legal questions involved in this appeal, but two inquiries are necessary, namely: (1) Is the evi-

dence in the record sufficient to bring the appellant within the classification of the exemption contemplated by the statute? And, (2) assuming that it is sufficient, is the appellant now estopped from claiming the exemption because of laches on its part, in not having claimed the same at an earlier date?

In our opinion there was no error in the rulings of the commission on the requests, in the nature of prayers, which it adopted for its guidance in reaching its conclusions. In brief, these instructions required the appellant company to establish by a fair preponderance of evidence that its cemetery is not being operated for profit to its organizers, or their successors, and that the other conditions justifying its exemption exist. That is to say, that the company does not accumulate pecuniary profit for purposes other than the maintenance and perpetual care of its cemetery, and that the lands involved were acquired, at their fair value, for the *bona fide* public purpose of a cemetery, and actually included therein. We also hold that there was no error in the commission's refusal to apply the doctrine of laches in the instant case.

The purpose of subsection 6, section 7, article 81, as its plain language implies, is to exempt from taxation cemetery companies *bona fide* formed for public purposes, which neither directly nor indirectly involve "a profit to the organizer or organizers thereof," and, applying the statute to the facts in the case before us, we find no difficulty in reaching the same conclusion which the commission reached.

In the instant case it is shown that the business in which the appellant is engaged is an extensive one. It employs a number of grave diggers and other laborers, and for its proper conduct it is necessary that it employ clerical service. It could not function without an executive officer, or president, or without a treasurer.

To hold that, because these several classes of employees are paid reasonable compensation for services actually rendered, the right of exemption should be denied, would in effect nullify the statute relating to the exemption.

The stipulation in the record expressly states that the company has no capital stock and that no commissions or bonuses are paid to any officer, director, or employee thereof; nor does any trustee or director receive any salary. Under such a state of facts we must hold that the appellee has not met the burden of proving that the actual profit of the company is being diverted from the source to which it should be applied, namely, the creation of a fund for the perpetual care and maintenance of the cemetery as contemplated by the statute. There being no evidence that any private capital is invested in the corporation by the organizers and their successors, or any one else, or that profit in the nature of dividends or otherwise is being paid to any one, our conclusion is that the payment of compensation to the employees indicated does not violate the articles of incorporation of the company, or bar it from its right to exemption under the law.

The remaining question is whether the appellant is estopped from claiming the exemption because of laches, it being conceded that it has regularly paid taxes on a part of the property acquired by it in 1904. There is nothing in the record to definitely show on what proportion of the 1904 acquired property the appellant has paid taxes, and it cannot be logically urged that it is chargeable with laches as to the property which it acquired in 1935, because it filed its petition for exemption in the succeeding year 1936. It has long been the policy of this State to exempt from taxation graveyards and cemetery companies which do not accumulate profits for any purpose other than for the maintenance and perpetual care of said property. One reason for such exemption, as stated in 26 *R. C. L.*, sec. 284, "is the difficulty of collecting a tax thereon, and the obvious impropriety of selling the graves of the dead in order to pay the expenses of carrying on the government of the living." Generally, the exemption embraces all property within the cemetery limits, which is essential to the use and enjoyment of the land for the purposes contemplated in

its certificate of incorporation. *Appeal Tax Court v. Baltimore Cemetery Co.,* 50 Md. 432.

Statutes similar to the Maryland statute, designed to exempt cemeteries and graveyards, either public or private, from taxation, are found in many other states of the Union, and this fact justifies the observation that the exemption is favored upon grounds of public policy.

It must be admitted that cases in which a taxpayer does not take advantage of an exemption are not numerous—they represent the exception rather than the rule. Cases, however, which hold that a taxpayer is estopped from claiming an exemption to which he is entitled by reason of his failure to claim the same over a long period of time, meanwhile paying taxes on the exempted property, are usually those in which the exemption is based on contract, and in which a consideration between the sovereign and the taxpayer and his successors is involved. If in such a situation the taxpayer acquiesces in the imposition of an assessment upon his property, and pays the sovereign taxes thereon over a long period of years, the principle of estoppel may be successfully invoked against him. In the case of *New Jersey v. Wright,* 117 U. S. 648, 6 S. Ct. 907, 910, 29 L. Ed. 1021, the question involved grew out of a special exemption from all taxes accorded an Indian tribe on certain territory released to it, in exchange for other territory released to the State of New Jersey. After the lapse of many years the Indian territory was sold to strangers who paid taxes on the property for over sixty years, and thereafter resisted further payment of the same upon the ground that the levy and assessment violated the obligations of a contract. In passing upon that issue the Supreme Court said: "If an exemption from taxation can be lost in any case by long acquiescence under the imposition of taxes it would seem that an acquiescence of sixty years * * * would be amply sufficient for this purpose, by raising a conclusive presumption of a surrender of the privilege. * * * Exemption from taxation, being a special privilege granted by the government to an individual, either in

gross or as appurtenant to his freehold, is a franchise. Non-user for sixty, or even thirty, years may well be regarded as presumptive proof of its abandonment or surrender."

We do not regard the above case as being analogous to the instant case, for the reason that the exemption now before us is not based on any consideration moving from the cemetery company to the State. It is a gratuity extended to that class of taxpayers who qualify themselves to receive it, and it may be withdrawn by the State at any time, without violating the obligations of a contract. The appellant here has not surrendered or abandoned any right. It has simply failed to avail itself of a right, and it cannot be logically contended that it has surrendered or abandoned that which it admittedly never actually accepted. The State has profited by the taxpayer's delay in availing itself of the immunity, and no one has been led to change his position thereby.

The doctrine of laches is an application of the general principles of estoppel. 4 *Pomeroy's Eq. Juris.*, sec. 1140. And, as stated in *Chase v. Chase*, 20 R. I. 202, 37 A. 804: "Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right." See, also, *Hale v. Jefferson County*, 39 Mont. 137, 101 P. 973.

For the reasons stated, the order of the Circuit Court for Baltimore County will be reversed.

*Order reversed, with costs to the appellant.*