BOETTCHER *v.* VAN LILL, Individually and as
Executrix of the Estate of Arthur F. Van Lill

[No. 4, September Term, 1971.]

*Decided October 14, 1971.*

The cause was argued before HAMMOND, C. J., and
BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and
DIGGES, JJ.

*Doris P. Scott* for appellant.

*J. Earle Plumhoff*, with whom were *Nolan, Plumhoff & Williams* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Cecil County (Roney, J.), ordering the appellant, Josephine Boettcher to execute a valid lease to Dolores Van Lill, who is appellee both individually and as executrix of the estate of Arthur Van Lill, her late husband. The seeds of this dispute were sown more than twenty-seven years ago when, in 1944, Frank Boettcher, deceased husband of appellant, entered into a written agreement to lease a portion of his farm to Arthur Van Lill.[1] The description of the property contained in that written memorandum was:

> "THE LESSOR does hereby let unto the Lessee all that piece or parcel of land situate and lying in Elk Neck, Cecil County, Maryland, more particularly described as follows:
> The area known as 'Windy Point' and the boundaries agreed to by the Lessor and Lessee . . . ."

This document called for a rent payment of $150.00 per year for five years with the lease renewable automatically unless proper notice was given by the lessee of a desire to terminate.

Following this agreement, which was never recorded, the Van Lills took possession of the land and constructed a house upon it for their personal use. In 1964 they decided to rent the house to a third party and for that reason a written agreement was drafted which contained a metes and bounds description of "Windy Point," based

---

1. In 1949 title to the farm was transferred from Mr. Boettcher individually to Mr. and Mrs. Boettcher as tenants by the entireties. The wife as survivor became sole owner when her husband died in 1970.

on an unauthenticated and unsigned surveyor's plat, prepared earlier that year. A copy of this indenture with the written description of the property was sent to Mr. Boettcher for his approval as prescribed by the Boettcher-Van Lill lease. He refused to approve the sublease but curiously suggested that Mr. Van Lill rent the property to the third party as "caretakers." Mr. Boettcher did not comment on the enclosed description. Until 1969 the property was rented by the Van Lills to various such "caretakers."

This particular litigation arose in 1968 when the Van Lills filed a bill of complaint seeking to exercise a claimed right of redemption under the Maryland Code (1957, 1966 Repl. Vol.) Art. 21, § 104 in order to obtain a fee simple interest in the property. The trial court sustained a demurrer to the original complaint with leave to amend, reasoning that since the agreement between Boettcher and Van Lill was for more than seven years and the lease had never been recorded, under Art. 21, § 1 it was void at law. *Schultz v. Kaplan,* 189 Md. 402, 415, 56 A. 2d 17 (1947). The appellee then abandoned his redemption request and filed an amended bill for specific performance contending that a lease, invalid at law, can be enforced as a contract to make a lease. *Kikas v. Baltimore County,* 200 Md. 360, 89 A. 2d 625 (1952) ; *Saul v. McIntyre,* 192 Md. 413, 64 A. 2d 282 (1949). The appellant again demurred, not because she quarreled with the theory that a lease void under Art. 21, § 1 can be enforced in equity ; but rather she argued that as a contract to make a lease it did not adequately describe the property and, therefore, was too vague and indefinite to be specifically enforced.

The trial court overruled this demurrer and, after an evidentiary hearing that allowed the introduction of parol evidence to define the boundaries of the 1944 document, ordered appellant to execute a valid lease. From that decree this appeal is taken.

The first argument which the appellant offers, based

116

on *Carter v. Md. & Pa. R. Co.*, 112 Md. 599, 77 A. 301 (1901) and *Tome Institute v. Davis*, 87 Md. 591, 41 A. 166 (1898), is that the trial court committed reversible error by admitting into evidence a completely unauthenticated plat. These cases as well as *Jarvis v. Berlin*, 153 Md. 156, 138 A. 7 (1927) hold that unauthenticated plats introduced to prove specific boundaries are inadmissible. We do not quarrel with this statement of law, but instead disagree with appellant's application of the law to the present litigation. She has misconstrued the purpose for which the plat was here received into evidence. If indeed it had been admitted to prove the boundaries of "Windy Point" then, as such, it would be inadmissible. However, Judge Roney in allowing the plat specifically stated a restricted purpose for which it would be received.

> "Well, I think for the *limited* purpose of explaining what was, what the witness has testified to, as far as the parcel of land intended, that this plat will be helpful to the Court in making a determination; and for this purpose, it will be admitted." (Emphasis added.)

The plat was therefore utilized to depict visually what Mrs. Van Lill related by her verbal testimony and not to stand as documentation of the boundaries. It would be no different had she simply drawn a blackboard sketch in court for clarification of her testimony. Certainly such a sketch could not be admitted into evidence as independent proof of any of the boundaries, but for the very limited objective of illustration, it can be received in the discretion of the trial judge. As our predecessors said in *White v. Northup*, 150 Md. 18, 22-23, 132 A. 258 (1926), such a "plat, to be admissible must be made, in effect, part of the testimony of a witness who had knowledge." This is in accord with both authoritative treatises as well as the case law from other jurisdictions. *Banks v. Watrous*, 134 Conn. 592, 59 A. 2d 723 (1948); *Dawson v. Davis*, 125 Conn. 330, 5 A. 2d 703 (1939); *Durden*

*v. Kerby,* 201 Ga. 780, 41 S.E.2d 131 (1947) ; 3 Wigmore, *Evidence,* §§ 790-94 (Chadbourn rev. 1970) ; *cf. Vogelsang v. Sehlhorst,* 194 Md. 413, 420-21, 71 A. 2d 295 (1950) ; *Consol. Gas Co. v. Smith,* 109 Md. 186, 199, 72 A. 651 (1909). We conclude the trial court, by accepting the plat for the stated circumscribed purpose, did not commit error.

The next argument deals with the sufficiency of the description of "Windy Point." The appellant has not raised the Statute of Frauds as a defense on this issue, apparently recognizing that the continued possession of the property pursuant to the lease, as well as the making of improvements and payment of rent by the lessee, constitute sufficient part performance to enable the granting of specific performance notwithstanding the provisions of the Statute. *Dove v. White,* 211 Md. 228, 239-40, 126 A. 2d 835 (1956) ; *Soehnlein v. Pumphrey,* 183 Md. 334, 336, 37 A. 2d 843 (1944) ; *Schluderberg v. Dietz,* 156 Md. 547, 550, 144 A. 774 (1929) ; Pomeroy, *Specific Performance of Contracts,* §§ 116-123 (3d ed. 1926). Had there not been part performance the Statute would have been a bar, since a "contract required to be in writing under the Statute of Frauds cannot be enforced if it be partly written and partly oral." *Forsyth v. Brillhart,* 216 Md. 437, 440, 140 A. 2d 904 (1958).

The appellant instead contends that the boundaries of "Windy Point" were not proved with sufficient certainty necessary to authorize a specific enforcement decree. She agrees, as well she should, that a bill for specific performance can be successfully maintained as long as;

> " 'the description [of the land used in the contract] . . . be such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. The description need not be given with such particu-

larity as to make a resort to extrinsic evidence unnecessary. Reasonable certainty is all that is required.' . . . *Powell v. Moody,* 153 Md. 62, 66, 137 A. 477, 478 (1927)." *Martin v. Michaels,* 259 Md. 346, 349-50, 269 A. 2d 833 (1970) and cases cited therein.

However, Mrs. Boettcher does not agree with the trial court's application of that statement of law to the facts of this case. Stated simply, the issue then is whether the agreement between the Boettchers and Van Lills, set out in the evidence, is of sufficient clarity to reasonably ascertain the intended boundaries of the property. The written document is insufficient to delineate the specific boundaries. Therefore, in order to enforce the agreement, the deficiency in the description would have to be remedied by admissible extrinsic evidence. The appellant claims this was not done and cites *Bellevue Club v. Punte,* 148 Md. 589, 129 A. 900 (1925) to support her argument. In that case the court denied specific performance because the witnesses who testified as to the description of the property were not present when the boundaries were agreed upon. However, in this case there is testimony in the record from witnesses who claim to have been on the premises when the boundaries were set and who described their location with sufficient particularity so as to warrant specific enforcement. We quote from the testimony of Millicent Bolden:

"Q. You say you were there when the boundary lines were agreed upon? A. Yes.
Q. What were these boundaries? A. Trees.
Q. Where were the trees located? A. One was on the shoreline; it was quite a large old tree.
Q. What shore was that? A. That's on the river.
Q. The Elk River? A. Yes, the Elk River; and the other was down, well, I would say maybe three feet from where he built a workshop on the cove side."

Mrs. Van Lill also testified on this point.

> "Q. Mrs. Van Lill, we were talking about the boundary lines. Were you present when the boundary lines were agreed upon? A. Yes, I was.
>
> Q. Do you know what the boundary lines are? A. They were the row of trees. There was one on the beach; it was a very large tree. There was another one at the end of the boundary or the cove; we called it the cove of the Elk River. There were two huge trees; the one on the beach had been struck by lightning and destroyed, the trunk is still there and new growth, and certainly it is easily identifiable.
>
> Q. Is the tree on the cove still there? A. Yes, not the tree itself but like the one on the beach, the trunk of the tree is still there and new growth.
>
> Q. All right; now did the property, where did the property line run then? A. The back of the property line?
>
> Q. Yes. A. The land side ran from the tree on the beach to the tree on the cove.
>
> Q. Now aside from that boundary, is there any other land boundary to this property? A. No.
>
> Q. What is the other boundary? A. Well, the other three sides are waterfront, two sides on Elk River and one side is the cove.
>
> Q. Now were you present at all times when this was discussed? A. Yes.
>
> Q. All right; was Mr. Boettcher present? A. It was discussed with Mr. Boettcher.
>
> Q. Did you agree upon these boundaries? A. Yes, I did.
>
> Q. Did you actually go to the land itself; were you on the land when you agreed upon the boundaries? A. Yes.
>
> Q. Did you walk off the boundaries? A. Yes."

120

From this and other evidence presented at trial, Judge Roney concluded that the boundaries could be ascertained with reasonable certainty. It is true of course there was discordant evidence presented, such as a tax receipt indicating the property was 1.06 acres rather than the 2.01 acres Mrs. Van Lill claimed. But, whatever inconsistencies existed were considered by the trial judge in context with all other evidentiary material, before he concluded that the contract to make a lease could be specifically enforced. There was evidence to support these findings by the trial judge and we do not consider his determination of the facts clearly erroneous. Maryland Rule 886.

Mrs. Boettcher has asked us to pass upon the issue of whether the property is subject to redemption under Art. 21, § 104. She is fearful that remarks by the trial judge in ruling on the demurrer to the original complaint, indicating that he thought the parties intended to create a redeemable ground rent, may be binding on her in some future action on that question. We decline to render any decision on this issue because it is not germane to the relief sought in the amended bill of complaint. However, her fears are unwarranted since the original bill including the relief which it sought was completely abandoned when the amended complaint seeking an entirely different type of relief was filed. We hold that any rights the parties may have under Art. 21, § 104 are unaffected by this litigation.

We note the decree grants Mrs. Van Lill relief both individually and as executrix of her late husband's estate. Since she was not individually a party to the lease between her husband and Mr. Boettcher, she is only entitled to benefit from this decree as executrix.

*Decree modified to delete Dolores Van Lill individually from its provisions and as modified is affirmed with costs to be paid by the appellant.*