# SCHILDT *v.* COKINOS

[No. 29, September Term, 1971.]

*Decided October 21, 1971.*

The cause was submitted on briefs to HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

Submitted by *Thomas S. Simpkins* and *Simpkins & Simpkins* for appellant.

Submitted by *Marcus J. Williams* and *Edward H. Hammond, Jr.*, for appellee.

FINAN, J., delivered the opinion of the Court.

The appellant, Lillian R. James Schildt, seeks to reverse an order of the Circuit Court for Worcester County (Prettyman, J.) decreeing that a contract for the sale of real estate be specifically enforced.

The record reveals that the appellee, George P. Cokinos, was approached by Robert S. Bounds, a real estate broker operating in the Ocean City, Maryland area, concerning the possible purchase of five lots of ground located in Ocean City and owned by the appellant, Mrs. Schildt. Mr. Cokinos agreed to buy the property and on May 11, 1968, entered into a contract of sale for the land with the appellant. The terms of the contract provided for a purchase price of $30,000; $3,000 of which was to be deposited by the buyer at the time of execution of the contract, and $7,000 of which was to be paid in cash at settlement. For the balance of the purchase price Mrs. Schildt agreed to accept a purchase money mortgage. The contract called for settlement to occur on or before July 11, 1968, and stipulated that *time was of the essence of the agreement.* It did not, however, provide for the place at which settlement was to occur. Mr. Bounds was to receive a commission of $2,000 from Mrs. Schildt for his participation in the transaction. The $3,000 deposit was paid at or immediately after the execution of the con-

tract. Several weeks before the proposed settlement date, Mr. Cokinos delivered to Bounds a check made payable to Robert Bounds Real Estate in the amount of $7,000 representing the cash payment required by the contract. A settlement sheet was also delivered to Bounds during June, 1968. According to the testimony taken in the court below, at some time prior to June 11, 1968, Mr. Cokinos executed (in the District of Columbia) the purchase money mortgage and the bill obligatory necessary for settlement and sent them to his attorney in Worcester County. Neither the bill nor the mortgage, however, was attested and the mortgage was not acknowledged. Mr. Cokinos who had not planned to attend the settlement was apparently unaware of this oversight. On June 14, 1968, Mr. Cokinos sent his attorney a check to cover legal fees and closing costs.

As a result of the failure to make definite provisions for the place and exact time of settlement, the parties did not meet for settlement on or before July 11, 1968. On July 12, 1968, Mr. Cokinos' attorney received from Bounds the check representing the cash portion of the purchase price to be paid to Mrs. Schildt at settlement, which amount Bounds had been holding in escrow. Having failed to reach Mrs. Schildt by phone on the 12th of July, a Friday, Mr. Cokinos' attorney mailed her a deed on the following Monday, July 15, 1968 (which was received the following day) and requested that she sign it and return it to his office, whereupon she would receive her money. This was the first communication Mrs. Schildt had received from anyone concerning the arrangement for settlement, she having received nothing prior to July 11th. At this point Mrs. Schildt refused to perform, alleging that Mr. Cokinos breached the contract by not performing on the 11th. Mr. Cokinos subsequently brought an action in the Circuit Court for Worcester County, in equity, seeking specific performance of the contract. From the order granting such relief to the appellee, Mrs. Schildt now appeals.

The chancellor was moved to compassion in this case

and understandably so, stating: "This Court is not prepared to damage and prejudice this purchaser because of some neglect on the part of the real estate broker or the attorney. It would be grossly inequitable and unfair, particularly in view of the fact that the seller was not in any manner prejudiced or damaged by the five day delay in the attempt to make arrangements for settlement by the purchaser's attorney." We, too, are moved with compassion for Mr. Cokinos, the purchaser, however, not to the extent of disturbing what we consider to be the well settled principle of law in this State that, "In a contract for the sale of land, when the time is expressly declared to be of the essence, a court of equity will ordinarily not grant specific performance where the purchaser has failed to make payment within the time specified in the contract." *Triton Realty Company v. Frieman*, 210 Md. 252, 256, 123 A. 2d 290 (1956), and cases cited therein. See also *Silver Holding Corp. v. Sheeler*, 231 Md. 35, 37, 188 A. 2d 562 (1963).

We are not unmindful that the facts in the case at bar make a far more appealing case for specific performance than do either *Triton* or *Silver Holding Corp.* Nonetheless, we fail to find in the record any "legal excuse" on the part of the purchaser for failing to perform within the prescribed time limitation as was present in *Budacz v. Fradkin*, 146 Md. 400, 408, 126 A. 220 (1924), which prompted this Court to comment, "If a party to an agreement of sale proves such facts as clearly amount to a legal excuse for his failure to perform within the time limited in the contract, and especially if those conditions are shown to be occasioned by the opposite party, a court of equity will not compel specific performance of the contract." Cf. also *Rymland v. Berger*, 242 Md. 260, 267, 219 A. 2d 7 (1966).

Respectable authority has also stated, "Even where time is made material, by express stipulation, the failure of one of the parties to perform a condition within the particular time limited will not defeat his right to specific performance, if the condition is subsequently performed

without unreasonable delay, and no circumstances have intervened which would render it unjust or inequitable to give such relief." 49 Am. Jur., *Specific Performance,* Section 32, p. 57, citing Am. Law Inst. Restatement, *Contracts,* Vol. 1, § 276 (e).[1] However, we cannot overlook that our predecessors in *Triton* refused to grant specific performance where the purchaser allowed 18 days to elapse after settlement date without making tender (and in the instant case, the delay of 5 days in making tender would seem to be a difference only of degree and not so substantial a difference as would support a valid distinction between *Triton* and the case at bar).

It is true that in *Triton* the seller was the one who notified the purchaser that the date of settlement had passed and that the contract was cancelled, whereas, in the case at bar the purchaser notified the seller after the lapse of the settlement date that he was ready, willing and able to perform prior to the responding notice of cancellation by the seller. However, we do not think that this in itself is material and to place great significance on who notified whom first after the expiration date would, in our opinion, be engrafting something onto the law which could only disturb what is a well settled principle of law in this State. Also, in *Triton,* there was evidence that the purchaser's attorney had made little or no preparations for settlement until after the date of settlement had passed, which is not the situation in the present case. Nonetheless, despite the preparations for settlement in the instant case, had the seller's attorney made a tender of settlement on the settlement date, which he did not, he would have been caught short with a mortgage lacking an acknowledgment by the mortgagors. Nor was the excuse of the existence of a satisfied but unreleased mortgage in *Silver Holding Corp.,* as the reason for not making tender on the settlement date, and which the chancellor refused to accept as justifying delay, in our opinion, any less justification for not meeting the settle-

---

1. In our opinion, however, § 276 (e) of the Restatement of Contracts does not reach this far.

ment date than the capability of tendering only an unacknowledged mortgage.

The chancellor sought to anchor his opinion to fast land by finding that Bounds, the realtor, was actually an agent for the seller, Mrs. Schildt. However, the reading of the record supports the position of Mrs. Schildt that Bounds' agency closed with the execution of the contract of sale. The case law of this State makes it abundantly clear that an agent for a seller for the purpose of procuring a purchaser for the sale of real estate fulfills his obligation once the purchaser is procured and the agency terminates when the contract is signed, unless there are present some unusual circumstances or understanding to the contrary. *Sears v. Polan's,* 250 Md. 525, 532, 243 A. 2d 602 (1968), citing *Hardy v. Davis,* 223 Md. 229, 164 A. 2d 281 (1960). Cf. also *One Twenty Realty Co. v. Baer,* 260 Md. 400, 405, 272 A. 2d 377 (1971) ; *Mechem Agency,* §§ 552 b, 553 (2nd ed. 1914) ; *Restatement (Second) of Agency,* § 106. No unusual circumstances or understanding were present to distinguish Bounds' agency from the ordinary brokerage transaction.

Even were we to assume, *arguendo,* that Bounds was the agent for the seller, this premise does not alter the legal significance of the omission on the part of the purchaser to make tender or offer to make tender, either to Bounds or Mrs. Schildt of an executed mortgage and bill obligatory on July 11, 1968.

Bounds, however, was not the agent of Mrs. Schildt after he had procured the purchaser. It was natural for him to evince interest in the transaction until he had received payment for the $2,000 commission which he had already earned at the time of the execution of the contract and his apparent willingness to hold the deposit of $3,000 and the $7,000 payment in escrow until such time as he had been paid his commission is understandable. The uncontradicted testimony reveals with some emphasis that Bounds denied that he had ever been authorized to do anything for Mrs. Schildt, other than to procure the buyer, and that once he had done that his obligation in

the transaction terminated. Mrs. Schildt unequivocally stated that she had never given Bounds authority to receive any money on her behalf or to make settlement or attend settlement for her.

The duty was clearly on the buyer to take the initiative in this case to assure that settlement was made on July 11, 1968, or that proper tender, as called for in the contract, was made on that date. In *Triton, supra,* we quoted with approval 92 C.J.S., sec. 232, p. 105, to the effect that:

> "* * * The purchaser, in order to be entitled to a conveyance, must perform all conditions precedent to the vendor's obligation to convey, unless they are waived or their performance excused. * * * Where, by the terms of the contract, the acts of the parties are to be concurrent, or it is provided that the deed is to be delivered on demand, it is the duty of the purchaser, not only to make a tender of the purchase price, as discussed supra sub-division a of this section, but also to demand performance from the vendor." 210 Md. at 259.

See also *Soehnlein v. Pumphrey,* 183 Md. 334, 337, 37 A. 2d 843 (1944).

*Order reversed, appellee to pay costs.*