28 Md. App. 18 (1975)
344 A.2d 148
RALPH C. BOYD
v.
MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY, PERSONAL REPRESENTATIVE OF THE ESTATE OF EULA M. MILBURN.
No. 796, September Term, 1974.
Court of Special Appeals of Maryland.
Decided September 5, 1975.
*19 The cause was argued before THOMPSON, DAVIDSON and MASON, JJ.
Jerome Blum and Gerald S. Klein for appellant.
Roy D. Cromwell and Robert E. Wieder for appellee.
DAVIDSON, J., delivered the opinion of the Court.
This is an appeal from a decree of the Circuit Court for Anne Arundel County entered by Judge James L. Wray on 1 August 1974, dismissing a bill of complaint for the specific performance of a contract for the sale of land brought against the appellee, Mercantile Safe Deposit and Trust Company, personal representative of the estate of Eula M. Milburn.[1] It all began on 22 November 1943 when a major portion of the land which is the subject matter of this dispute (Cook property) was conveyed from George J. Cook and Elna Y. Cook, his wife, to Ralph P. Milburn and Eula M. Milburn, his wife, as tenants by the entireties (seller).[2] On 10 February 1944, a parcel of land, lying to the southeast of the Cook property, was conveyed to the seller (lot 13). On 19 May 1964, the seller conveyed approximately 1.67 acres of the Cook property to one of their sons and his wife as tenants by the entireties (Milburn parcel).
*20 This particular litigation arose in 1972 when on 30 November the appellant, Ralph C. Boyd (buyer), filed a bill of complaint against the seller for specific performance of a written contract for the sale of land which was executed by Ralph P. Milburn and Eula M. Milburn, his wife, and Ralph C. Boyd and Joyce F. Boyd, his wife.[3] On June 1971, the seller, alleging that the description of the property was vague and indefinite, repudiated the contract. The description of the land sold, contained in the contract submitted into evidence by the buyer, was as follows:
"... Seller does hereby bargain and sell unto the said buyer and the latter does hereby purchase from the former the following described property, situated and lying in Anne Arundel County, Maryland, being the property known as Alpine Beach., Pasadena, approximately 63 acres..."
This document called for a purchase price of $130,000. A deposit of $1,000 was to be paid before the agreement was signed with an additional cash deposit of $29,000 to be paid at the time of settlement. The balance of $100,000 was to be paid by a purchase money mortgage subject to interest at six per cent with principal payments of $20,000 per year to be made for the next five years. The contract specifically provided that settlement and possession were to occur within sixty days from the date of the agreement and that time was of the essence. In addition, the contract stated that it constituted the entire agreement between the parties and that neither they nor their agents would be bound by any terms, conditions or representations not written in the contract.
Attached to the contract submitted into evidence by the buyer was a plat of the Cook property, dated August, 1943, prepared by J.R. McCrone, Jr., Annapolis, from recorded plats and deed descriptions and not from a survey. This plat had the metes and bounds of the Cook property, then owned *21 by the seller, marked clearly upon it. It also contained visible landmarks and references to recorded plats which made it possible to determine the precise boundaries of the Cook property as it then existed. The plat contained no metes and bounds description or other identification of either lot 13 or the Milburn parcel.
At an evidentiary hearing held on 25 June 1974, the trial court allowed the introduction of parol evidence to describe the circumstances and conditions surrounding the sale. The realtor with whom Ralph P. Milburn had listed the property for sale testified, insofar as here relevant, that after the property was listed for sale Mr. Milburn gave him a copy of a plat describing the metes and bounds of the Cook property. He and Mr. Milburn then walked the property and he was shown its physical boundary lines. He stated that the copy of the plat given to and used by him was identical to that attached to the contract in evidence and that the plat accurately depicted the boundaries of the Cook property. Finally, he said that he had discussed the sale and the price of the property with both Mr. and Mrs. Milburn who then signed the contract of sale in his presence.
The realtor who sold the property to the buyer testified that before the contract of sale was signed, she and the buyer met Mr. and Mrs. Milburn at Alpine Beach. At the time of that meeting, both Mr. and Mrs. Milburn were seated in an automobile. After appropriate introductions had been made, Mr. Milburn, the realtor and the buyer went on a tour of the property. Mrs. Milburn remained in the car. The realtor and the buyer himself testified, insofar as here relevant, that the party of three then walked over the entire property. At that time Mr. Milburn gave them a plat which they all examined as they observed the physical boundaries of the land. They both stated that Mr. Milburn specifically pointed out the Milburn parcel and indicated that it was excluded from the property to be purchased. They both testified that a copy of the same plat which had been given to and utilized by them was attached to the contract of sale at the time of its execution and that except for its failure to delineate the Milburn parcel, which was specifically *22 excluded from the sale, it accurately depicted the boundaries intended to be conveyed. There was no evidence presented to show that during the physical demonstration of boundaries Mr. Milburn pointed out the boundaries of lot 13. Nor was there any evidence to show that at that time Mr. Milburn indicated that lot 13 was to be included in the property to be conveyed.
The trial court determined that because neither the contract of sale nor the attached plat contained any reference to the Milburn parcel or lot 13, the description of the land contained within the contract and on the plat did not accurately describe the property to be conveyed and was too vague and indefinite to be specifically enforced. He ordered that the bill of complaint be dismissed. It is from that decree that this appeal is taken.
The buyer contends that the description contained in the contract and on the attached plat, coupled with the parol evidence relating to the circumstances and conditions existing at the time the agreement was executed, described the property intended to be conveyed with sufficient certainty to authorize a specific enforcement decree. We agree.
The principles applicable to specific performance of contracts relating to the ownership and use of land have been well established in Maryland. The questions of whether specific performance of a contract relating to the ownership and use of land shall be decreed and what shall be the terms of the decree rest within the sound discretion of the equity court. The exercise of the court's discretion, however, must not be arbitrary and is controlled by established principles of equity. Where a contract for the sale of real estate is fair, reasonable and certain in all of the terms, it is as much the duty of a court of equity to decree specific performance as it is for a court of law to award damages for breach of contract.[4]
*23 The description of land which is the subject of a contract must be such as to enable the court to determine with certainty with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. The description need not be given with such particularity as to make a resort to extrinsic evidence unnecessary. Reasonable certainty is all that is required.[5] As was stated in Kiser v. Eberly 200 Md. 242, 248, 88 A.2d 570, 573 (1952):
"When all the circumstances of possession, ownership, situation of the parties, and of their relation to each other and to the property, as they existed at the time the negotiations took place and the instrument was executed, are disclosed, then if the meaning and application of the instrument, read in the light of those circumstances, are clear and certain, the parties will be bound by it as a sufficient contract."
The performance that a court decree requires for specific performance need not be identical with that promised in the contract. Such a decree may be drawn so as best to effectuate the purposes for which the contract was made, and it may be granted on such terms and conditions as justice requires.[6]
Where under appropriate circumstances, the description of the property covered by the contract is sufficiently certain but the seller is unable to transfer title to all of the land that he contracted to transfer, specific performance may be *24 sought and granted with respect to the balance.[7] Similarly, where the description of only a part of the property allegedly covered by a contract is sufficient, so that it is evident that there is agreement as to a part of the transaction, specific performance as to the agreed upon portion may be authorized.[8] Under such circumstances, if the seller has offered to cancel the contract or has repudiated it, the buyer should be given an election: he should either be refunded his money or, upon a proper amendment of his complaint, be granted specific performance, with no diminution in price, as to the property which was accurately described and agreed upon by the parties as a part of the transaction.[9]
Applying these principles to the instant case produces a clear result. There is nothing in the contract, the attached plat or the parol evidence presented to indicate that lot 13 was intended to be a part of the instant transaction. The description contained in the contract and the attached plat, as amplified by the parol evidence concerning the conditions and circumstances surrounding the negotiation of the contract at the time it was executed, clearly establish, however, that the transaction was intended by the parties to cover all of the Cook property except the Milburn parcel, which the seller did not own and which the seller, therefore, was unable to transfer to the buyer. Because the evidence shows, and the parties agree, that this much, at least, was a part of the transaction, the trial court should have authorized specific performance to this extent. Moreover, because the seller here repudiated the contract on 4 June 1971, the buyer should be given an election. He should either be refunded his deposit or, upon proper amendment of his complaint, be granted specific performance, with no *25 diminution in price, as to the property which was correctly described and agreed upon by the parties.
The seller contends here as below that the buyer was not entitled to specific performance because he did not exercise due diligence in pursuing his rights. More particularly, the seller complains that under a contract which expressly declared time to be of the essence, settlement was not achieved within 60 days as required; a period of one-and-one-half years elapsed between 4 June 1971, when the contract was repudiated, and 30 November 1972, when the bill of complaint was filed; a six-and-one-half month delay was occasioned by the buyer's failure to answer interrogatories submitted on 21 February 1973;[10] and trial was not held until 25 June 1974, a total of three years and ten months from the date of the agreement between the parties. While this issue was not decided below, we believe it should be resolved for the guidance of the trial court. Maryland Rule 1085.
Whether or not time is expressly declared to be of the essence of a contract, a party seeking the remedy of specific performance, as well as a party who desires to maintain an objection founded upon the other's lack of due diligence or laches, must show himself to have been "ready, desirous, prompt, and eager."[11] Where time is expressly declared to be of the essence of the contract, a party seeking specific performance, who himself fails promptly to perform with respect to a material requirement of the agreement, ordinarily is guilty of a lack of due diligence and is deprived of the right to specific performance.[12] A failure or delay in such performance, however, caused by the default of a party against whom specific performance is sought, or by the fault *26 of both parties, cannot serve to defeat entitlement to specific performance.[13] In addition, a party who fails promptly to seek relief from a court or delays in prosecuting an action once instituted, may be deprived of the right to specific performance.[14]
The doctrine of laches is an application of the general principles of estoppel.[15] In applying the doctrine of laches, a court of equity refuses to grant relief to a complainant who has delayed in bringing the complaint for an unreasonable length of time, thereby causing prejudice to the adverse party.[16] In determining what will constitute laches so as to bar relief in equity, the court has no inflexible rule as to length of time, but must decide the question from all the facts and circumstances in each particular case.[17] Prejudice or injury to the party raising laches is an essential element.[18] So long as the position of the parties is not changed and there is no prejudice from the delay, laches is inapplicable.[19]
*27 There were undisputed facts in this record to show the inexorable course of events which took place. Prior to the execution of the agreement, a deposit of $1,000 was delivered by the buyer to the real estate firm representing the seller. Settlement had been arranged for 11 October 1970 but because of Milburn's death on 5 October 1970, settlement was necessarily postponed. A settlement date of 16 October 1970 was established. The buyer's attorney appeared; the seller's attorney did not. On 23 November 1970, a guardian was appointed for Eula Milburn. By a letter dated 29 December 1970, a new settlement date of 22 January 1971 was set, with settlement to take place in the office of the buyer. In a letter dated 6 January 1971, the seller indicated that settlement would not take place as scheduled because the Circuit Court for Baltimore County had ordered an appraisal of the various properties located at or near Alpine Beach owned by Eula Milburn and the guardian of her estate would not make any conveyance of real estate until that appraisal was approved by the court. In a letter dated 17 February 1971, the buyer advised the seller that he continued to be ready for settlement and requested the seller to advise him of a convenient settlement date. On 3 March 1971, the seller replied that he had to await the receipt of the appraisal ordered by the court before he could make any conveyance of real estate. On 31 May 1971, the buyer again wrote a letter requesting advice as to a settlement date. On 4 June 1971, the seller asserted that the purported contract was vague, indefinite and unenforceable and repudiated it. On 17 April 1972, the realtor holding the deposit returned the $1,000 check to the buyer. On 26 April 1972, the buyer sent the deposit check back to the realtor and, in a letter, indicated that he believed he had a contract which was in force for the sale of the Alpine Beach property. On 12 May 1972, the seller indicated surprise about that comment in view of the fact that in May and June of 1971 it was made clear that there would be no settlement under the purported contract "for several reasons, including but not limited to the fact that the contract was not legally sufficient and did not set forth the land to be conveyed." Thereafter, on 30 *28 November 1972, the bill of complaint for specific performance was filed. Trial was held on 25 June 1974.
This record unequivocally establishes that all of the delay occasioned before June, 1971, was solely attributable to the seller. Thus, the buyer was not responsible for either the failure to settle within 60 days as prescribed by the contract or for any prejudice which may have resulted from the incompetence and death of the seller. Moreover, there is absolutely no evidence to show either that the year-and-one-half delay between the seller's repudiation of the contract and the filing of the instant suit for specific performance or the delays occurring after the filing of the bill of complaint were prejudicial to the seller.
Under these circumstances, we find that the buyer acted with due diligence throughout the proceedings, was not guilty of laches, and is entitled to specific performance. Accordingly, the order of the trial court dismissing the bill of complaint will be reversed and the case will be remanded for further proceedings and the entry of an order in accordance with this opinion.
Order reversed.
Case remanded for further proceedings and the entry of an order in accordance with this opinion.
Costs to be paid by appellee.
NOTES
[1] Eula M. Milburn was declared incompetent and on 23 November 1970 Ralph N. Milburn, a son, was appointed as guardian of her estate. She died on 4 September 1974. Thereafter, Mercantile Safe Deposit and Trust Company qualified as personal representative of her estate and by order dated 14 February 1975, was made a party appellee in interest in place of Ralph N. Milburn, guardian. See Maryland Rule 1065.
[2] The wife, as survivor, became sole owner when her husband died on 5 October 1970.
[3] As a result of divorce proceedings, Joyce F. Boyd's interest in this agreement was assigned to Ralph C. Boyd at some time before the hearing in this case held on 25 June 1974.
[4] Gross v. J. & L. Camping & Sports Center, Inc., 270 Md. 539, 543-44, 312 A.2d 270, 273-74 (1973); Soehnlein v. Pumphrey, 183 Md. 334, 340, 37 A.2d 843, 846 (1944); Smoot v. Rea, 19 Md. 398, 405 (1863); see The Glendale Corp. v. Crawford, 207 Md. 148, 154, 114 A.2d 33, 35-36 (1955).
[5] Boettcher v. Van Lill, 263 Md. 113, 117-20, 282 A.2d 122, 124-26 (1971); Sears v. Polan's 5¢ to $1.00 Store of Annapolis, Inc., 250 Md. 525, 528-29, 243 A.2d 602, 604-05 (1968); Baker v. Dawson, 216 Md. 478, 488-91, 141 A.2d 157, 162-64 (1958); Powell v. Moody, 153 Md. 62, 66-67, 137 A. 477, 478-79 (1927); Helmik v. Pratt, 153 Md. 685, 690-96, 139 A. 559, 561-63 (1927); King v. Kaiser, 126 Md. 213, 218, 94 A. 780, 782 (1915); Engler v. Garrett, 100 Md. 387, 397, 59 A. 648, 650 (1905); Kraft v. Egan, 76 Md. 243, 252-53, 25 A. 469, 470 (1892). See Kiser v. Eberly, 200 Md. 242, 248, 88 A.2d 570, 571, 573 (1952).
[6] Westpark, Inc. v. Seaton Land Co., 225 Md. 433, 454-55, 171 A.2d 736, 745-46 (1961); Brooks v. Towson Realty, Inc., 223 Md. 61, 73-74, 162 A.2d 431, 437-38 (1960); Restatement of Contracts, § 359 (2).
[7] Westpark, Inc., supra, at 225 Md. 455, 171 A.2d 746; Diggs v. Siomporas, 248 Md. 677, 681, 237 A.2d 725, 727 (1968); Improvement Co. v. Boyd, 161 Md. 269, 276-78, 156 A. 795, 797-98 (1931); Foley v. Crow, 37 Md. 51, 60-63 (1872).
[8] Martin v. Michaels, 259 Md. 346, 352-53, 269 A.2d 833, 837 (1970); Westpark, supra, at 225 Md. 454-55, 171 A.2d 745-46.
[9] Martin, supra, at 259 Md. 353, 269 A.2d 837; Diggs, supra at 248 Md. 681, 237 A.2d 727; Westpark, supra, at 225 Md. 454-55, 171 A.2d 745-46.
[10] On 25 June 1974, the trial court denied the seller's motion to dismiss for failure to answer interrogatories because no prejudice to the seller was shown as a result of the delay.
[11] Silver Holding Corp. v. Sheeler, 231 Md. 35, 37, 188 A.2d 562, 563 (1963); Doering v. Fields, 187 Md. 484, 488-89, 50 A.2d 553, 555 (1947); Penn v. McCullough, 76 Md. 229, 231, 24 A. 424 (1892).
[12] Schild v. Cokinos, 263 Md. 261, 264, 282 A.2d 499, 501 (1971); Silver, supra, at 231 Md. 37, 188 A.2d 563; Tarses v. Miller Fruit & Produce Co., 155 Md. 448, 454, 142 A. 522, 524 (1928).
[13] Kimm v. Andrews, 270 Md. 601, 612-13, 313 A.2d 466, 472-73 (1974); Loughran v. Ramsburg, 174 Md. 181, 187-88, 197 A. 804, 807-08 (1938); Budacz v. Fradkin, 146 Md. 400, 407-08, 126 A. 220, 222-24 (1924); Brewer v. Sowers, 118 Md. 681, 686-87, 86 A. 228, 230 (1912).
[14] Hungerford v. Hungerford, 223 Md. 316, 320-21, 164 A.2d 518, 520-21 (1960); Tarses, supra, at 155 Md. 454, 142 A. 524; Ridgway v. Ridgway, 69 Md. 242, 247, 14 A. 659, 660 (1888); Nelson v. The Hagerstown Bank, 27 Md. 51, 74-75 (1867); Miller, Equity, § 661.
[15] Salisbury Beauty Schools v. State Board of Cosmetologists, 268 Md. 32, 63, 300 A.2d 367, 384-85 (1973), quoting Oak Lawn Cemetery of Baltimore County v. Baltimore County Comm'rs, 174 Md. 280, 291, 198 A. 600, 605, 115 A.L.R. 1478, 1483-84 (1938).
[16] See Parker v. Board of Election Supervisors, 230 Md. 126, 130-31, 186 A.2d 195, 197 (1962); Sinclair v. Weber, 204 Md. 324, 337, 104 A.2d 561, 567 (1954).
[17] Whitney v. Halibut, 235 Md. 517, 520, 202 A.2d 629, 635 (1964); Parker, supra, at 230 Md. 130-31, 186 A.2d 197; Sinclair, supra, at 204 Md. 337, 104 A.2d 567; Berman v. Leckner, 193 Md. 177, 187, 66 A.2d 392, 396 (1949); Kaufman v. Plitt, 191 Md. 24, 28-29, 59 A.2d 634, 635 (1948); Loughran, supra n. 13, at 174 Md. 187, 197 A. 807-08.
[18] Anne Arundel County Bar Ass'n, Inc. v. Collins, 272 Md. 578, 584, 325 A.2d 724, 728 (1974); Salisbury, supra, at 268 Md. 63, 300 A.2d 384-85; Simpers v. Clark, 239 Md. 395, 403, 211 A.2d 753, 757 (1965).
[19] Salisbury, supra, at 268 Md. 63, 300 A.2d 384-85; Arundel Supply Corp. v. Cason, 265 Md. 371, 376, 289 A.2d 585, 588 (1972); Oak Lawn Cemetery, supra, at 174 Md. 291, 198 A. 605; Loughran, supra, at 174 Md. 187, 197 A. 807-08.